J. S54039/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| G. F. K. | : | |
| | : | |
| Appellant | : | No. 756 EDA 2015 |

Appeal from the Judgment of Sentence January 29, 2015
In the Court of Common Pleas of Wayne County
Criminal Division No(s).: CP-64-CR-0000466-2013

BEFORE: BOWES, PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:　　　　　**FILED NOVEMBER 06, 2015**

Appellant, G. F. K., appeals from the judgment of sentence entered in the Wayne County Court of Common Pleas. Following a jury trial, Appellant was convicted of rape forcible compulsion,[1] involuntary deviate sexual intercourse with child,[2] aggravated indecent assault,[3] and corruption of minors.[4] Appellant was sentenced to 50 to 101 years' imprisonment.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3121(a)(1).

[2] 18 Pa.C.S. § 3123(b).

[3] 18 Pa.C.S. § 3125(a)(7).

[4] 18 Pa.C.S. § 6301(a)(1).

Appellant challenges the sufficiency of the evidence and contends the sentence was excessive. We affirm.

We adopt the facts as set forth in the trial court opinion.[5] Trial Ct. Op., 5/8/15, at 4-16. At trial, Appellant testified that the four minor victims were related to him. Three of the victims were his nieces and one was his sister-in-law's sister. N.T., 11/12/14, at 67. He denied the allegations from C.K. *Id.* at 68-69. He also denied the allegations from B.M. *Id.* at 69. He denied the allegations from V.K. *Id.* at 69-70. He denied playing truth or dare with any of the victims. *Id.* at 72. He denied that anything "occurred on at least one of those Christmas present wrapping nights . . . ." *Id.* at 83. He denied having sexual intercourse with C.K. *Id.* at 84. He denied having sexual intercourse with C.W. *Id.* at 85. He denied "perpetrat[ing] any sexual abuse on" C.W. *Id.* at 86. He denied having "any improper sexual, or untoward contact with" V.K. *Id.*

Appellant testified, *inter alia*, as follows:

> [Defendant's Counsel]: . . . [I]f you say that you didn't commit any of these crimes, do you have any reason or you have . . . any reason [sic] suspect what the root or the basis of the reporting was against you from the girls?
>
> A: The girls generally feeling hurt over their, over family issues.
>
> Q: What sort of family issues are you talking about?

---

[5] We note that Appellant entered a plea of *nolo contendere* on June 27, 2014. On August 18, 2014, he filed a motion to withdraw the plea. On September 2, 2014, the court granted the motion.

A: Their grandmother abandoning their grandfather in Michigan, or Minnesota, abandoning the family and then suddenly popping back in their life's [sic].

Q: Well were there any family fractures that would be closure [sic] than grandma and the children?

A: Yeah, there was [sic] physical altercation between myself and [B.K.]

Q: And that would be your brother, [B.K.]?

A: Yes, sir.

Q: Do you recall about when that occurred?

A: 2008.

Q: Were any of the girls present at or about that time?

A: [C.K.] and [V.K.]

Q: And where did this occur?

A: In the drive way in front of the big bay window at the end of the home where the girls were.

\* \* \*

Q: Was that a physical altercation?

A: Yes, sir.

Q: . . . Physical between you and your brother, [B.K.]?

A: Yes, sir.

Q: In the presence of two of the girls?

A: They stood at the bedroom window and seen [sic] it all.

\* \* \*

[The Commonwealth]: Isn't it true that [B.K.] was a drinker . . . ?

A: Yes, ma'am.

Q: Isn't it true that this fight was you defending [C.K. and V.K.'s mother] against [B.K.] when he was drunk?

A: Yes, ma'am.

Q: And you're telling this jury today that these girls are making this up against you because you defended their mother?

A: They didn't see it as that at the time, ma'am. All they saw was me yank my brother out of the car and start pounding on him.

*Id.* at 87-88, 106.

Appellant was sentenced on January 29, 2015. On count 1, rape forcible compulsion, Appellant was sentenced to ten to twenty years' imprisonment. On counts 2, 3, 4, and 5, rape forcible compulsion, he was sentenced to six to twelve years' imprisonment. The sentences were all consecutive to that imposed on the prior count. Appellant was given a concurrent sentence of ten to twenty years' imprisonment on count 6, involuntary deviate sexual intercourse. On count 11, aggravated indecent assault, Appellant was given a concurrent sentence of three to ten years' imprisonment. On count 12, rape of a child, Appellant was sentenced to ten to twenty years' imprisonment to run consecutively to count 5. Appellant was sentenced to ten to twenty years on count 13, involuntary deviate sexual intercourse, concurrent to count 1. On count 14, rape, he was

- 4 -

sentenced to five-and-one-half-years to eleven years' imprisonment, consecutive to count 12. Appellant was sentenced to six months to two years' imprisonment on count 15, corruption of minors, consecutive to count 14. He filed a motion for post trial relief on February 9, 2015. The motion was denied on February 12, 2015. This timely appeal followed. Appellant filed a court ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the trial court filed a responsive opinion.

Appellant raises the following issues for our review:

1. Whether the Commonwealth sustained its burden of proof beyond a reasonable doubt relative to the charges for which [Appellant] was convicted?

2. Whether the sentence imposed by the Trial Court was excessive and utterly harsh and oppressive?

Appellant's Brief at 7.

First, Appellant contends the Commonwealth did not sustain its burden of proof beyond a reasonable doubt relative to the charges for which he was convicted. Appellant contends that one victim, C.K., testified as to one incident of sexual intercourse with him and therefore the guilty verdict on Counts 2-5 should be vacated. *Id.* at 16-17. C.K. testified that Appellant "[w]alked into my room, he shut the door and locked it and push me down on the bed, which wasn't hard since I was already laying down for bed. He pushed me down on the bed, held my arms down and he stuck his penis in my vagina." *Id.* at 16. He contends that she was unable to specify the timeframe. *Id.* Appellant avers that the testimony in support of Counts 2-5

is based upon "sparse testimony" and "vague testimony." *Id.* at 16-17. He concludes "[t]he rape convictions of counts 2, 3, 4, and 5 must be vacated." *Id.* at 17.

Appellant avers the rape conviction under Count 12 must be vacated based upon the testimony of a second victim, B.M., that during a Truth or Dare game, Appellant put "his penis in us." *Id.* at 17. "There is no explanation as to what part of her body was penetrated by [Appellant's] penis." *Id.* He contends "[t]here is little, if any confirmation of the rape charge in Count 14," of C.W., because she testified that Appellant "[t]ook off his pants and pulled his penis out . . . and he would penetrate me." *Id.* Appellant argues "it is left to the imagination of the jury what [he] allegedly penetrated. Convictions cannot rest on imagination." *Id.*

Appellant claims the convictions in Counts 6 and 13 for involuntary deviate sexual intercourse must be vacated because "the testimony only reflects vague recollections of [C.K. and B.M.]" *Id.* at 19. He avers:

> [C.K.] testifies firstly that [Appellant] asked her to touch his balls and then asked [B.M.] to lick his penis and lick his balls. [C.K.] only testifies that she saw [B.M.] do that and also testifies "yes," in response to a question "Did you do that?" Nowhere in testimony or in the record is it ever learned what she actually allegedly did. The same testimony surrounds the proof of Count 13. [B.M.] recalls having been dared to put her mouth on [Appellant's] penis. "And did you do that," questioned the Commonwealth. Her response was "yes." The lingering question, however, was what did she really do?
>
> Again, the testimony only reflects vague recollections of the witnesses . . . .

*Id.* at 19.[6]

Appellant claims that "[t]he Aggravated Indecent Assault charge under Count 11 is also specious. There must be some time frame." *Id.* at 20. He states C.K. "testified that '. . . Normally, every time he raped me . . .' [Appellant] put his finger in her vagina." *Id.*

Appellant contends the corruption of minors charge in Count 15 must also be vacated as it "stems from testimony from [V.K.] that she saw [B.M.] and [C.K.] touch [Appellant's] 'weiner' and put their mouths on [his] 'weiner' and that [he], some five years later, rubbed her crotch." *Id.* at 21. He concludes that "the convictions tied to Counts 11 and 25 must be vacated, too." *Id.*

Prior to addressing Appellant's specific arguments, we examine the distinctions between sufficiency of the evidence and weight of the evidence challenges.

> A challenge to the sufficiency of the evidence is entirely distinct from a challenge to the weight of the evidence.

---

[6] Appellant avers the Commonwealth did not establish the date when any of the rape and involuntary deviate sexual intercourse offenses occurred. *Id.* at 20. In *Commonwealth v. Niemetz*, 422 A.2d 1369 (Pa. Super. 1980), the defendant was convicted of a "rape, involuntary deviate sexual intercourse, indecent assault and corruption of minors" which occurred over a period of several years. *Id.* at 1372. In *Niemetz*, this Court rejected the defendant's contention "that the trial court improperly permitted the victim to testify to incidents of rape without requiring her to specify the dates of such occurrences." *Id.* at 1373.

The distinction between these two challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to

> ignore them or to give them equal weight with all the
> facts is to deny justice.

*Commonwealth v. Smith*, 853 A.2d 1020, 1028 (Pa. Super. 2004) (citation omitted).

Appellant's arguments ignore the fundamental standards of a sufficiency challenge, which require this Court to review the evidence in the light most favorable to the Commonwealth. *See id.* Accordingly, his arguments are tantamount to a review of the trial evidence in a light most favorable to himself and thus assail the weight, rather than the sufficiency, of the evidence. *Cf. Commonwealth v. Palo*, 24 A.3d 1050, 1055 (Pa. Super. 2011).

As a prefatory matter, we consider whether Appellant has waived the issue of the weight of the evidence. Pennsylvania Rule of Criminal Procedure 607 requires that a claim that the verdict was against the weight of the evidence "be raised with the trial judge in a motion for a new trial." Pa.R.Crim.P. 607(A).[7] The failure to raise a challenge to the weight of the

---

[7] Rule 607 provides:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> *   *   *
>
> (2) by written motion at any time before sentencing; or
>
> (3) in a post-sentence motion.

evidence in the trial court results in the waiver of the challenge for the purposes of appeal. *Smith*, 853 A.2d at 1028.

Instantly, prior to sentencing, Appellant raised the weight of the evidence claim in his motion for post trial relief *See* Mot. for Extraordinary Post Trial Relief Pursuant to Rule 704 Pa.R.Crim.P. in the Form of a Mot. for J. of Acquittal, or in the Alternative a Mot. in Arrest of J., and or Mot. for New Trial, 11/24/14, at 5. The trial court denied the motion on November 25, 2014. Appellant raised the weight of the evidence claim in his post sentence motion. Mot. for Post Trial Relief Pursuant to Rule 720 Pa.R.Crim.P., 2/9/15, at 5. Therefore, we need not find the issue waived. *See* Pa.R.Crim.P. 607(A)(2)-(3).

As noted above, our review is limited to whether the trial court abused its discretion in denying Appellant's motion for a new trial. *See Smith*, 853 A.2d at 1028. This Court has stated:

> [A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Stated another way, . . . this Court has explained that the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003) (quotation marks and citation omitted). Furthermore, "a trial court's

---

Pa.R.Crim.P. 607(A)(2)-(3).

exercise of discretion in finding that a verdict is or is not against the weight of the evidence is '[o]ne of the least assailable reasons for granting or denying a new trial.'" **Id.** (citing **Commonwealth v. Widmer**, 744 A.2d 745, 753 (Pa. 2000)).

Instantly, the trial court opined:

> Under count #1, a jury found that from August 15, 2006 to August 14, 2007, [Appellant] raped his eight (8) year old niece, [C.K.]
>
> \* \* \*
>
> Here, the jury obviously found [C.K.'s] testimony credible and chose not to believe [Appellant's] version of the events.
>
> \* \* \*
>
> Under Counts #2, #3, #4, and #5, a jury found that from August 15, 2007 to August 14, 2011, [Appellant] raped his niece [C.K.] on four (4) other separate occasions.
>
> \* \* \*
>
> Here, once again, the jury found [C.K.'s] testimony credible and chose not to believe [Appellant's] version of the events. It was within the province of the jury as fact-finder to resolve all issues of credibility . . . . This [c]ourt does not find the evidence to be weak and inconclusive. [C.K.] specifically testified that she was less than 13 years of age when [Appellant] raped her: (1) on the pull-out couch in [C.K.'s] family home, (2) on [Appellant's] couch in Honesdale, (3) on [Appellant's] floor in Honesdale, and (4) on [C.K.'s] bed during "Truth or Dare."
>
> \* \* \*
>
> Under Count #12, a jury found that from July 6, 2006 to December 25, 2007, [Appellant] raped his brother's nine (9) year old sister-in-law, [B.M.]

- 11 -

* * *

Here, the jury obviously found [B.M.'s] testimony credible and chose not to believe [Appellant's] version of events.

* * *

Under Count #14, a jury found that from July 25, 2000 to February 13, 2003, [Appellant] raped his five (5) year old niece, [C.W.]

* * *

Here, the jury obviously found [C.W.'s] testimony credible and chose not to believe [Appellant's] version of the events.

* * *

Under Count #6, a jury found that from Agust 15, 2006, to August 14, 2007, [Appellant] engaged in involuntary deviate sexual intercourse with his niece, [C.K.]

* * *

Here, the jury obviously found [C.K.'s] testimony credible and chose not to believe [Appellant's] version of the events.

* * *

Under Count #13, a jury found that from July 7, 2006 to December 15, 2007, [Appellant] engaged in involuntary deviate sexual intercourse with his brother's sister-in-law, [B.M.]

* * *

Here, the jury obviously found [B.M.'s] testimony credible and chose not to believe [Appellant's] version of the events.

\* \* \*

Under Count #11, a jury found that [Appellant] committed Aggravated Indecent Assault against his niece, [C.K.]

\* \* \*

Here, the jury obviously found [C.K.'s] testimony credible and chose not to believe [Appellant's] version of the events.

\* \* \*

Under Count #15, a jury found that [Appellant] committed Corruption of Minors[, as to V.K.]

\* \* \*

Here, the jury obviously found [V.K.'s] testimony credible and chose not to believe [Appellant's] version of the events.

\* \* \*

The jury in this case listened to four (4) young ladies recount how [Appellant] took the innocence of childhood away from them. According to [Appellant's] testimony, all four (4) of these young ladies are liars. The reason he provided was that they were upset with him over a physical altercation that took place between him and his brother, [B.K.]. [Appellant] testified that the fight started because [B.K.] was drunkenly beating his wife. According to [Appellant], [C.K.] and [V.K.] witnessed the altercation and did not understand that he was trying to defend their mother. The jury obviously did not find [Appellant's] reason to be credible. This [c]ourt agrees with the jury and does not find the verdict so contrary to the evidence as to make the award of a new trial imperative.

Trial Ct. Op. at 4-5, 7-14, 16, 18. We discern no abuse of discretion by the trial court in denying Appellant's motion for a new trial. *See Sullivan*, 820 A.2d at 806.

Lastly, Appellant contends the sentence imposed by the trial court was excessive and utterly harsh and oppressive.[8] Appellant's Brief at 7. Appellant challenges the discretionary aspect of his sentence. When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. Pa.R.A.P. 2119(f). "The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence." *Id.*

Instantly, Counsel has not included a separate Rule 2119(f) statement in the appellate brief. Nevertheless, because the Commonwealth has not objected to this deficiency and we may discern the gist of Appellant's claim,

---

[8] We note that the certified record did not include the January 29, 2015 sentencing transcript, which we deem necessary for our review of Appellant's sentencing issues. Upon informal inquiry by this Court, the trial court provided that transcript as a supplemental record. We remind Appellant's counsel, "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." *See Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008) (citations omitted).

- 14 -

we decline to find waiver on the lack of a 2119(f) statement. *See Commonwealth v. Shugars*, 895 A.2d 1270, 1274 (Pa. Super. 2006).

Appellant claims that, although the imposition of consecutive or concurrent sentences for multiple convictions is discretionary, his "sentence is actually a life sentence and one highly excessive **regardless of the charges and the impact such crimes have on victims**." Appellant's Brief at 26 (emphasis added).

As a prefatory matter, we consider whether Appellant has waived the issue. Our Rules of Appellate Procedure set forth the required contents of appellate briefs. "The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without necessary detail." Pa.R.A.P. 2116(a). "The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). "Citations of authorities must set forth the principle for which they are cited." Pa.R.A.P. 2119(b).

"[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009). Instantly, in

the argument section of Appellant's brief, he contends he has raised a substantial question.[9] However, he does not present any discussion of the issue with citation to relevant authority. Therefore, we could find the issue waived. ***See id.***

Assuming, *arguendo*, that the issue was not waived, and that Appellant raised a substantial question, we shall address the discretionary aspect of his sentence. Our standard of review is guided by the following principles:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

> More specifically, 42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination:

> [T]he sentence imposed should call for confinement that is consistent with the protection of the public, **the gravity of the offense as it relates to the impact on the life of the victim** and on the community, and the rehabilitative needs of the defendant.

> 42 Pa.C.S.A. § 9721(b).

---

[9] Appellant acknowledges "the depravity" of the crimes for which he was convicted. Appellant's Brief at 25.

- 16 -

Furthermore,

Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." 42 Pa.C.S. § 9781(c). Under 42 Pa.C.S. § 9781(d), the appellate courts must review the record and consider the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing guidelines. The weighing of factors under 42 Pa.C.S. § 9721(b) is exclusively for the sentencing court, and an appellate court could not substitute its own weighing of those factors. The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S. § 9781(c).

*Commonwealth v. Bricker*, 41 A.3d 872, 875-76 (Pa. Super. 2012)

(alterations and some citations omitted and emphasis added).

This Court has held that

42 Pa.C.S.A. section 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question. *Commonwealth v. Johnson*, 873 A.2d 704, 709 n. 2 (Pa. Super. 2005); *see also* *Commonwealth v. Hoag*, [ ] 665 A.2d 1212, 1214 ([Pa. Super.] 1995) (explaining that **a defendant is not entitled to a "volume discount" for his or her crimes**).

*Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa. Super. 2005) (some citations omitted and emphasis added).

In *Commonwealth v. Dodge*, 77 A.3d 1263 (Pa. Super. 2013) *appeal denied*, 91 A.3d 161 (Pa. 2014), this Court affirmed a judgment of sentence of forty years, seven months' to eighty-one years and two months' incarceration for "forty counts of receiving stolen property, two counts of burglary, two counts of criminal trespass, and one count each of possession of a small amount of marijuana, possession of drug paraphernalia, and unauthorized use of a motor vehicle." *Id.* at 1267 (footnote omitted). This Court opined that

> a defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question. *See Commonwealth v. Moury*, 992 A.2d 162, 171–172 (Pa. Super. 2010) ("The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, **considering the nature of the crimes** and the length of imprisonment.")

*Id.* at 1270 (some citations omitted and second emphasis added).

Our Supreme Court has stated:

> Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any

lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. **Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.** This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. . . .

*Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (emphasis added).

"[A] crime's impact on the victim continues to be a significant element of a sentencing judge's consideration . . . ." *Commonwealth v. Coulverson*, 34 A.3d 135, 149-50 (Pa. Super. 2011). Furthermore, "it is undoubtedly appropriate for a trial court to consider a defendant's lack of remorse as a factor at sentencing, provided that it is specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs." *Commonwealth v. Bowen*, 975 A.2d 1120, 1125 (Pa. Super. 2009) (citation omitted).

At the sentencing hearing, the record reveals the following: Appellant stipulated to the admission of the sexually violent predator assessment. N.T., 1/29/15, at 3. Appellant's counsel stated:

> Your Honor, I've gone over this sexually violent predator assessment with [Appellant] at the Wayne County Correctional Facility this past weekend, in detail, and discussed it again with him this morning and we have no objection for the admission, or to the admission of the sexually violent predator assessment dated January 19, 2015 and performed by Mary E. Muscari. It's also part of the pre-sentence investigation report, Your Honor.

- 19 -

*Id.*

C.W. testified at the sentencing hearing, *inter alia*, as follows:

. . . All of my life I've lived with the abuse no little girl should ever have to live with. I'll never know what it's like to have a normal childhood, or be a normal kid. I'll never know who I could've been, what I could've done. Instead of having depression and ADD I could've been an outgoing child with my new friends, maybe even a cheerleader; who knows. I was four when it started. Who knows what I could've been like? My brain wasn't even fully formed and now never will be. . . . I will never know what [it] is like to feel safe, feel protected. I'll never get those years back. . . . With all that has happened to me the mental pain hurts worse than the physical. . . . This experience has made life hard on my family. It has mentally and physically hurt me and my loved ones. . . . I take so many pills, at least 10 to 12, on a daily basis. Every day's a struggle for me and it shouldn't have to be. The things I've experienced affect the way I think on a daily basis. It has affected my school life, my home, and my everyday life. My whole life I have struggled in school until the rape stopped. When it did, I became an honor roll student. . . . At home I get very paranoid and I become extremely jumpy. My anxiety goes up, all because the memories come and go. Some days it's a struggle to get out of bed and live among other people. When I'm around others I feel judged. I feel pitied. Always feeling like I have to watch out for myself to make sure it's safe. . . . I lost my innocence to that man but he can't take my strength away from me. He took my innocence without my permission, so now I'll take his freedom away from him. I may never get that life I should've lived. I will never be that person I used to be all because of [Appellant].

*Id.* at 7-9. B.W. stated, *inter alia*, as follows:

What I can tell you, as I don't know if and when I'll ever be able to trust anyone again. . . . All I know how to do is push people away for the fear of being hurt again, whether it be a relationship with a guy, my family members, or my friends. . . . I feel like emotionally I am numb, and

whenever someone does try to get close to me, I get this feeling in my chest of coldness and I want to be as far away from that person as possible. This has had a particularly strenuous impact on the relationship I have with my parents. Ever since the rape was disclosed all they want to do [sic] me is hug me and shield me from all of this when all I want to do is be left alone. . . . I'm terrified of any guy going near me in a sexual way. . . . I don't like going anywhere. If I do, I find myself always looking over my shoulder out of fear, fear that is unexplainable. . . . When you're little the world is all good and perfect and no one can hurt you, and it was like that for me for 8 years. After being raped, my world view has totally changed. I no longer see the world as a safe and fun  but look like [sic] it as a war field.

*Id.* at 10-12. C.W. testified, *inter alia*, as followed:

. . . I don't have anything written down or prepared for today but this whole situation pretty much has had a great effect on my life. I had to live with it up until I was 18 years old,[10] and then coming to find out that it now [sic]

---

[10] At trial, C.W. testified:

[The Commonwealth]: At some point did you tell somebody what was happening to you?

A: I did.

Q: When was that?

A: My senior year of high school, 2013, I told my cousin, [C.].

Q: Would that be [C.K.]?

A: Yes.

Q: Tell us about that conversation?

A: We were in gym class in the locker room. We were talking about something and all of a sudden she said she

only happened to me, but my cousin's too. It made me feel like it was mainly my fault that all this happened because I never spoke out about it, never told anybody. Being raped at such a young age makes you feel like there's no one you can trust. I was on a soccer team when I was 4 years old when the raping started, and my coach was a male and I ended up not playing soccer because I was afraid of my coach. There's multiple things I have been able to do, but at the same time I haven't been because I've been afraid of guys all of my life. I used to think that I can turn to my family for trust and support but there's no one really you can trust but yourself.

*Id.* at 12.[11]

At sentencing, the trial court stated:

I've read every page of this pre-sentence report and, again, it was very thorough . . . . I read the DA's sentencing memorandum, the sexual offender assessment board assessment, the victim impact statements I had as well.

\* \* \*

Let me say something to the victims at this time . . . . I'm sure you heard this said to you before but as Judge

had to tell me something and I was like, okay, you can tell me. And she said how [Appellant] had raped her and [B.M.] And I looked at her and I was like, he did the same thing to me . . . .

\* \* \*

A: She asked why I didn't tell and I told her because I was afraid nobody would believe me and she said that she felt the same way.

N.T., 11/12/14, at 10-11.

[11] Only three of the four victims were present at the sentencing hearing. *Id.* at 14.

- 22 -

> I'm saying it to you. None of this was your fault; none of it. And I appreciate your courage to come forward, and your courage here again today.
>
> Anybody doubts that there's evil in the world, this ought to convince you otherwise. I was struck not only by the horrendous, despicable, disgusting criminal activities of [Appellant], but also . . . about the way you used violence to inflict your will upon these young people. Why, why any man would take a 4 year old child and do this to her is beyond human understanding. And then they had the courage to come forward today, and I looked at you as they were giving their accounts, and you had the audacity, the audacity, to look through your paperwork as they were pouring their hearts out to everybody here in this courtroom. . . .

*Id.* at 13-15.

We find no relief is due. In the case *sub judice*, the court considered, *inter alia*, the presentence investigation report and the victim impact statements. ***See Devers***, 546 A.2d at 18; ***Coulverson***, 34 A.3d at 149-50. The court noted Appellant's lack of remorse. ***See Bowen***, 975 A.2d at 1125. We find no abuse of discretion in the imposition of consecutive sentences. ***See Dodge***, 77 A.3d at 1270; ***Marts***, 889 A.2d at 612. The court considered the gravity of the offenses. ***See Bricker***, 41 A.3d at 875. We discern no abuse of discretion by the trial court in the imposition of sentence. ***See id.*** at 875-76.

Judgment of sentence affirmed.

J.S54039/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/6/2015</u>

IN THE COURT OF COMMON PLEAS OF THE 22ND JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
COUNTY OF WAYNE

COMMONWEALTH OF PENNSYLVANIA, :

VS. :

G███ F. K█████, : CRIMINAL DIVISION

        Defendant : NO. 466-CR-2013

_____

STATEMENT OF REASONS

_____

On November 12, 2014, following a trial by jury, Defendant, G██ K███, was found guilty

of seven (7) counts of Rape of a Child, two (2) counts of Involuntary Deviate Sexual Intercourse

with a Child; one (1) count of Aggravated Indecent Assault, and one (1) count of Corruption of

Minors. On January 29, 2015, Defendant was sentenced to undergo incarceration in a State

Correctional Facility for a period of 600 months (50 years) to 1,212 months (101 years). Presently,

Defendant appeals from this sentence.

Following Defendant's sentencing, Defendant filed a Motion for Post-Trial Relief.

Defendant filed the motion in the form of: (1) a Motion for Judgment of Acquittal, (2) a Motion in

Arrest of Judgment, (3) a Motion for New Trial, (4) a Motion to Modify Sentence, and (5) a Motion

for Transcription, Production and Circulation of the Notes of Testimony. On February 12, 2015,

this Court granted Motion 5 and denied Motions 1, 2, 3, and 4. Presently, Defendant appeals from

this order.

**Sentencing Order**

As stated previously, Defendant was sentenced to undergo incarceration in a State

Correctional Facility for a period of 600 months (50 years) to 1,212 months (101 years). It is argued

SCANNED

that this sentence is "utterly harsh and oppressive." *Defendant's Concise Statement of Matters Complained of on Appeal*, paragraph 30. Defendant requests that the sentences imposed be modified to run concurrently with any and all other sentences imposed by this Court.

It has long been established that the imposition of sentence rests solely within the broad discretion of the sentencing judge. Commonwealth v. Williams, 317 A.2d 250, 251 (1974). It is equally well-settled that an appellate court will not find an abuse of that broad discretion, providing that the sentence is within statutory limits, unless the sentence imposed is so manifestly excessive as to inflict too severe a punishment. Commonwealth v. Person, 297 A.2d 460, 462 (1972). The imposition of a concurrent or consecutive sentence for multiple convictions also rests within the discretion of the sentencing judge, unless the sentence imposed is so manifestly excessive as to inflict too severe a punishment. Commonwealth v. Norris, 375 A.2d 122, 124 (Pa. Super. 1977).

Rape, being a felony of the first degree (18 Pa. C.S.A. § 3121), is punishable by a maximum sentence of twenty (20) years imprisonment. 18 Pa. C.S.A. § 1103(1). In the present case, Defendant was convicted by a jury of seven (7) counts of Rape of a Child. Involuntary Deviate Sexual Intercourse, being a felony of the first degree (18 Pa. C.S.A. § 3123(b)), is punishable by a maximum sentence of twenty (20) years imprisonment. 18 Pa. C.S.A. § 1103(1). In the present case, Defendant was convicted by a jury of two (2) counts of Involuntary Deviate Sexual Intercourse with a Child. Aggravated Indecent Assault, being a felony of the second degree (18 Pa. C.S.A. § 3125(7)), is punishable by a maximum sentence of ten (10) years imprisonment. 18 Pa. C.S.A. § 1103(2). In the present case, Defendant was convicted by a jury of one (1) count of Aggravated Indecent Assault. Corruption of Minors, being a misdemeanor of the first degree (18 Pa. C.S.A. § 6301(a)(1)), is punishable by a maximum sentence of five (5) years imprisonment.

18 Pa. C.S.A. § 1104(1). In the present case, Defendant was convicted by a jury of one (1) count of Corruption of Minors.

Defendant's sentence to undergo incarceration in a State Correctional Facility for a period of 600 months (50 years) to 1,212 months (101 years) is well within the statutory limits. Furthermore, this Court does not find the sentence imposed to be so manifestly excessive as to inflict too severe a punishment. Through the use of force and threats, the Defendant, over the course of several years, used four (4) young members of his family for his own sexual gratification. The emotional scarring the Defendant has inflicted upon the lives of these four (4) young ladies will never fully heal.

## Motion for Judgment of Acquittal

As stated previously, this Court denied Defendant's Motion for Judgment of Acquittal. It is argued that the testimony and evidence presented by the Commonwealth was insufficient to sustain the underlying jury verdict; therefore, Defendant should be acquitted of all charges. In reviewing the sufficiency of the evidence:

> We must view the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt.

Commonwealth v. Davis, 799 A.2d 860, 864-65 (Pa. Super. 2002). "The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the trier of fact unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." Id. at 866.

## I.    Rape of a Child

Defendant was convicted by a jury of seven (7) counts of Rape of a Child. The relevant statutory provision governing this offense provides: "A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa. C.S.A. § 3121(c). "Penetration, however slight, with the penis is necessary to establish the element of sexual intercourse." Commonwealth v. Wall, 953 A.2d 581, 584 (Pa. Super. 2008). "A rape victim's uncorroborated testimony to penal penetration is sufficient to establish sexual intercourse and thus support a rape conviction." Id.

Under Count #1, a jury found that from August 15, 2006 to August 14, 2007, Defendant raped his eight (8) year old niece, C███ K██ (hereinafter "C███"). C██ testified in relevant part as to what occurred when she was an eight (8) year old little girl:

Q: You said when you turned 8 something changed, correct?

A: Correct.

Q: What happened?

A: It was night time and G██ K██, I was laying in my bed and he walked into my room, he shut the door and locked it and he pushed me down on the bed, which wasn't hard since I was already laying down for bed. He pushed me down on the bed, held my arms down and he stuck his penis in my vagina.

N.T. Trial, 11/10/2014, at 6-7.

Here, the jury obviously found C████ testimony credible and chose not to believe Defendant's version of the events. It was within the province of the jury as fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge Defendant guilty. This

Court does not find the evidence to be weak and inconclusive. C████ testified that she was less than 13 years of age when Defendant penetrated her vagina with his penis. Therefore, the evidence is sufficient to prove guilt beyond a reasonable doubt.

Under Counts #2, #3, #4, and #5, a jury found that from August 15, 2007 to August 14, 2011, Defendant raped his niece, C████, on four (4) other separate occasions. C████ testified in relevant part as to what transpired as she grew up from an eight (8) year old little girl to a thirteen (13) year old young lady:

Q: How often did it happen?[1]

A: The same, once a month, once every two weeks.

Q: And was it always in your bedroom?

A: No.

Q: Where else did it happen?

A: The pull-out couch.

N.T. Trial, 11/10/2014, at 8.

Q: Let's put it this way, C████, did he move out the first time after he began to rape you?[2]

A: Yes.

Q: So, it was after you were 8 years old?

A: Yes.

Q: And do you know where the defendant moved?

A: Down here in Honesdale, I passed it today going to Dunkin.

Q: When the defendant moved to Honesdale, did he continue to rape you?

---

[1] The ADA's question is referring to the first incident when Defendant penetrated C████'s vagina with his penis.
[2] Here, the ADA is establishing a timeline. Defendant was living in C████'s family home when the first incident occurred.

A: Yes.

N.T. Trial, 11/10/2014, at 9-10.

Q: Let's talk about G███'s house in Honesdale; where would it happen there?

A: It would happen in the living room on the couch or on the floor.

N.T. Trial, 11/10/2014, at 10.

Q: Approximately, how many times did the defendant rape you on that couch, or on the floor next to the couch, in Honesdale?

A: Until he moved out again back into my house and still raped me.

N.T. Trial, 11/10/2014, at 12.

Q: So, you don't exactly know how old you guys were?[3]

A: No, I'm sorry, everything kind of mixes because it happened so much.

Q: Okay, so on this day when you guys are playing Truth or Dare the game begins, correct?

A: Correct.

N.T. Trial, 11/10/2014, at 13.

Q: At some point did the game change?

A: Yes.

Q: What happened?

A: He dared B██████ to touch his penis.

Q: And did she do that?

A: She did.

Q: Did you see her do that?

A: Yes, I did.

---

[3] The ADA's question is referring to an incident that occurred after the Defendant moved from his Honesdale home back into C███'s family home.

Page 6 of 19

N.T. Trial, 11/10/2014, at 13.

Q: And then what happened?

A: After that it started getting worse and he dared us to get on the bed and after we got on the bed he dared us to lay down and he stuck his penis in me and B██████. It was a dare once for me and a dare twice for B██████, twice for me, three times for B██████, three for me and it went back and forth like that. She tried fighting, which was silly of her and he smacked her, but she tried.

N.T. Trial, 11/10/2014, at 15.

Q: At what point did the defendant move out of your house?

A: When I was 13.

Q: And is that when he stopped raping you?

A: Yes.

N.T. Trial, 11/10/2014, at 19.

Here, once again, the jury found C██'s testimony credible and chose not to believe Defendant's version of the events. It was within the province of the jury as fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge Defendant guilty. This Court does not find the evidence to be weak and inconclusive. C███ specifically testified that she was less than 13 years of age when Defendant raped her: (1) on the pull-out couch in C███'s family home, (2) on the Defendant's couch in Honesdale, (3) on the Defendant's floor in Honesdale, and (4) on C███'s bed during "Truth or Dare." Therefore, the evidence is sufficient to prove guilt beyond a reasonable doubt.

Under Count #12, a jury found that from July 6, 2006 to December 25, 2007, Defendant raped his brother's nine (9) year old sister-in-law, B██████ M█████ (hereinafter "B██████"). B██████ testified in relevant part as to what occurred when she was a nine (9) year old little girl:

A: We were playing Truth or Dare and it was innocent like stuff to embarrass each other and G███ got involved and it turned sexual.

Q: Do you remember about how old you were at this time?

A: Um, around 9.

N.T. Trial, 11/10/2014, at 48-49.

Q: Alright, tell us what happened.

A: G███, I don't remember exactly in what order everything happened, but I do remember being dared to put my mouth on his penis.

Q: And did you do that?

A: Yes.

Q: Go on.

A: He dared me and C████ to, I don't exactly remember if it was a dare or not, but I do remember him going back and forth between us putting, like, his penis in us.

N.T. Trial, 11/10/2014, at 49-50.

Here, the jury obviously found B██████'s testimony credible and chose not to believe Defendant's version of the events. It was within the province of the jury as fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge Defendant guilty. This Court does not find the evidence to be weak and inconclusive. B██████ testified that she was less

than 13 years of age when Defendant penetrated her vagina with his penis. Therefore, the evidence is sufficient to prove guilt beyond a reasonable doubt.

Under Count #14, a jury found that from July 25, 2000 to February 13, 2003, Defendant raped his five (5) year old niece, C█████ W█████ (hereinafter "C█████"). C█████ testified in relevant part as to what occurred when she was a five (5) year old little girl:

Q: At some point did something happen between you and your Uncle Gary?

A: Yes.

Q: How old were you?

A: I was about five years old.

Q: Tell us what happened?

A: I was in my playroom down in the basement playing with my toys and he came downstairs and told me to follow him to my room. I followed him and he locked the door behind us. He took off his pants and pulled his penis out and laid on my bed and told me to come here and he put me on top of him.

N.T. Trial, 11/12/2014, at 5.

Q: C█████ did this ever happen to you again?

A: Yes.

Q: About how often did it happen to you?

A: About one or two times a week?

Q: For how long?

A: Three years.

N.T. Trial, 11/12/2014, at 6.

Q: What did he do when you were on his lap?

A: He would face me away from him and he would penetrate me.

Q: With his penis?

A: Yes.

N.T. Trial, 11/12/2014, at 8.

Q: At some point does the defendant stop doing this to you?

A: Yes.

Q: How old were you?

A: Eight years old.

N.T. Trial, 11/12/2014, at 10.

Here, the jury obviously found C███████'s testimony credible and chose not to believe Defendant's version of the events. It was within the province of the jury as fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge Defendant guilty. This Court does not find the evidence to be weak and inconclusive. C██████ testified that she was less than 13 years of age when Defendant penetrated her vagina with his penis. Therefore, the evidence is sufficient to prove guilt beyond a reasonable doubt.

## II.    Involuntary Deviate Sexual Intercourse with a Child

Defendant was convicted by a jury of two (2) counts of Involuntary Deviate Sexual Intercourse with a child. The relevant statutory provision governing this offense provides: "A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa. C.S.A. § 3123(b). Deviate sexual intercourse is considered to have occurred

if "the perpetrator engaged in acts of oral or anal intercourse, which involved penetration however slight." Commonwealth v. L.N., 787 A.2d 1064, 1070 (Pa. Super. 2001).

Under Count #6, a jury found that from August 15, 2006 to August 14, 2007, Defendant engaged in involuntary deviate sexual intercourse with his niece, C█████. C████testified in relevant part:

A: After she does that it's my turn and he dares me to touch his balls and after that it was oral. He asked B█████ to lick his penis and then there was time when he said lick his balls, suck on his penis, that stuff.

Q: Did you do that?

A: Yes.

Q: Did you see B██████ do that?

A: Yes.

N.T. Trial, 11/10/2014, at 15.

Q: Now, the second Christmas incident, and I think there were two; is that correct?

A: That's correct.

Q: Occurred when?

A: When I was 8 or 9 with B██████, um, 9 and 11 I don't know. 8/9, 9/10 could be either.

N.T. Trial, 11/10/2014, at 25.

Here, the jury obviously found C████'s testimony credible and chose not to believe Defendant's version of the events. It was within the province of the jury as fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge Defendant guilty. This Court does not find the evidence to be weak and inconclusive. C████ testified that she was less

than 13 years of age when Defendant penetrated her mouth with his penis. Therefore, the evidence is sufficient to prove guilt beyond a reasonable doubt.

Under Count #13, a jury found that from July 7, 2006 to December 15, 2007, Defendant engaged in involuntary deviate sexual intercourse with his brother's sister-in-law, B██████. B██████ testified in relevant part:

> A: We were playing Truth or Dare and it was innocent like stuff to embarrass each other and G███ got involved and it turned sexual.
>
> Q: Do you remember about how old you were at this time?
>
> A: Um, around 9.

N.T. Trial, 11/10/2014, at 48-49.

> Q: Alright, tell us what happened.
>
> A: G███, I don't remember exactly in what order everything happened, but I do remember being dared to put my mouth on his penis.
>
> Q: And did you do that?
>
> A: Yes.

N.T. Trial, 11/10/2014, at 49-50.

Here, the jury obviously found B██████'s testimony credible and chose not to believe Defendant's version of the events. It was within the province of the jury as fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge Defendant guilty. This Court does not find the evidence to be weak and inconclusive. B██████ testified that she was less than 13 years of age when Defendant penetrated her mouth with his penis. Therefore, the evidence is sufficient to prove guilt beyond a reasonable doubt.

### III.  Aggravated Indecent Assault

Defendant was convicted by a jury of one (1) count of Aggravated Indecent Assault. The relevant statutory provision governing this offense provides: "Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if the complainant is less than 13 years of age." 18 Pa. C.S.A. § 3125(7).

Under Count #11, a jury found that Defendant committed Aggravated Indecent Assault against his niece, C███ C███ testified in relevant part:

Q: Did the defendant ever put his fingers inside your vagina?

A: Yes.

Q: When did that happen?

A: Normally, every time before he raped me.

N.T. Trial, 11/10/2014, at 7.

Q: At what point did the defendant move out of your house?

A: When I was 13.

Q: And is that when he stopped raping you?

A: Yes.

N.T. Trial, 11/10/2014, at 19.

Here, the jury obviously found C███'s testimony credible and chose not to believe Defendant's version of the events. It was within the province of the jury as fact-finder to resolve

all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge Defendant guilty. This Court does not find the evidence to be weak and inconclusive. C████testified that she was less than 13 years of age when Defendant penetrated her vagina with his fingers. No good faith medical, hygienic or law enforcement purpose existed because C████ testified that he would penetrate her with his fingers before raping her. Therefore, the evidence is sufficient to prove guilt beyond a reasonable doubt.

## IV.  Corruption of Minors

Defendant was convicted by a jury of one (1) count of Corruption of Minors. The relevant statutory provision governing this offense provides: "whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree." 18 Pa. C.S.A. § 6301(a)(1). "In deciding what conduct can be said to corrupt the morals of a minor, the common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it." Commonwealth v. Slocum, 86 A.3d 272, 277 (Pa. Super. 2014).

Under Count #15, a jury found that Defendant committed Corruption of Minors. V█████ K██ (hereinafter "V█████"), who was thirteen (13) years old on the day of trail, testified in relevant part:

A: We were playing Truth or Dare, it was all innocent and G███ was in there playing my Nintendo Gameboy and he was beating a level for me and then he started playing and it went all wrong.

Q: Do you remember about how old you were at the time?

A: Not exactly, but I would say about 6 or 7.

N.T. Trial, 11/10/2014, at 63-64.

Q: Tell us why the game went all wrong.

A: Because then he started daring us to do inappropriate stuff.

Q: Who's he?

A: G██K███.

Q: Do you remember the first inappropriate dare?

A: Touch his wiener.

Q: Do you remember who he dared to touch his wiener?

A: B█████ and C████

Q: Did they touch his wiener?

A: Yes.

Q: Did you see them do that?

A: Yes.

N.T. Trial, 11/10/2014, at 64.

Q: Did you go to your bed?

A: Yes.

Q: Is that in the same room as where the Truth or Dare game was going on?

A: Yes.

Q: Did you keep your eyes open?

A: For most of the part.

Q: Tell us what you saw.

A: I saw C███ and B█████ put their mouth and touch G██'s wiener.

Q: Did you see anything else?

A: No.

Q: At some point did you close your eyes.

A: Yes.

N.T. Trial, 11/10/2014, at 65.

Q: At some point after that did something else happen with G██?

A: Yeah.

Q: About how old were you?

A: I don't know exactly, but about 11.

Q: Okay and tell us what happened that time.

A: I was sleeping over at his house, me and my brother B████ and my cousin and my brother woke me up and I tried to get them in trouble and went into my uncle's room and told him and he picked up the blankets and said come on, so I got into the bed with him and when I laid down he started rubbing my crotch.

N.T. Trial, 11/10/2014, at 66.

Here, the jury obviously found V█████'s testimony credible and chose not to believe Defendant's version of the events. It was within the province of the jury as fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the

evidence, believe all, none, or some of the evidence, and ultimately adjudge Defendant guilty. This Court does not find the evidence to be weak and inconclusive.

According to V█████'s testimony, she was less than 18 years of age because the first incident occurred when she was six (6) or seven (7), and the second incident occurred when she was eleven (11). V█████ was born September 8, 2001 (N.T. Trial, 11/10/2014, at 62); therefore, the first incident would have occurred in 2007 or 2008, and the second incident would have occurred in 2012. Defendant was born June 13, 1982 (N.T. Trial, 11/12/2014, at 57); therefore, he was of the age of 18 years and upwards when both incidents occurred. Based on the common sense of the community, as well as the sense of decency, propriety and morality which most people entertain, Defendant corrupted the morals of V█████. (1) when Defendant had sexual contact with C████ and B█████ in the presence of V█████, and (2) when Defendant rubbed the vaginal area of V█████. Therefore, the evidence is sufficient to prove guilt beyond a reasonable doubt.

## Motion in Arrest of Judgment

As stated previously, this Court denied Defendant's Motion in Arrest of Judgment. It is argued that the testimony and evidence presented by the Commonwealth rendered a jury verdict that was against the clear weight of the evidence; therefore, Defendant's motion should have been granted. "[T]he assertion that the verdict is against the weight of the evidence is not a proper consideration in passing on a motion in arrest of judgment..." Commonwealth v. Kirkman, 399 A.2d 720, 722 (Pa. Super. 1979). The proper standard to be used in deciding the motion is as follows:

> Whether accepting all of the evidence and all reasonable inferences therefrom, upon which, if believed, it would be nonetheless insufficient in law to find beyond a reasonable doubt that the appellee is guilty of the crime charged.

Id. For the reasons set forth in the previous section, the Commonwealth presented sufficient evidence to find beyond a reasonable doubt that Defendant is guilty of the crimes charged.

## Motion for New Trial

As stated previously, the Court denied Defendant's Motion for New Trial. It is argued that the testimony and evidence presented by the Commonwealth rendered a jury verdict that was against the clear weight of the evidence; therefore, Defendant's Motion for New Trial should have been granted.

> A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trail judge, and his decision will not be reversed on appeal unless there has been an abuse of discretion. The test is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail.

Davis, at 865 (Pa. Super. 2002).

The jury in this case listened to four (4) young ladies recount how the Defendant took the innocence of childhood away from them. According to Defendant's testimony, all four (4) of these young ladies are liars. The reason he provided was that they were upset with him over a physical altercation that took place between him and his brother, B███ K███ N.T. Trial, 11/12/2014, at 88. Defendant testified that the fight started because B███ was drunkenly beating his wife. N.T. Trial, 11/12/2014, at 110. According to the Defendant, C███ and V███ witnessed the altercation and did not understand that he was trying to defend their mother. N.T. Trial, 11/12/2014, at 88, 106. The jury obviously did not find Defendant's reason to be credible. This Court agrees with the jury and does not find the verdict so contrary to the evidence as to make the award of a new trial imperative.

BY THE COURT

DATE: _May 9, 2016_

RAYMOND L. HAMILL
PRESIDENT JUDGE
22ND JUDICIAL DISTRICT

cc:    Richard B. Henry, Esq.
       District Attorney

*KP*