**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Charles Adrian SULLIVAN, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 20, 2002.
Filed March 25, 2003.

Wilbert H. Beachy, Somerset, for appellant.

Dwight G. Diehl, Asst. Dist. Atty., Bedford, for Com., appellee.

BEFORE: FORD ELLIOTT, ORIE MELVIN, and GRACI, JJ.

OPINION BY GRACI, J.:

¶ 1 Appellant, Charles Adrian Sullivan ("Sullivan") appeals from a judgment of sentence entered in the Court of Common Pleas of Bedford County on November 8, 2001.[1] We affirm the judgment of sentence and remand the matter with directives.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 In September 2001, Sullivan was convicted by a jury of voluntary manslaughter in the shooting death of Michael Terrance McElfish ("McElfish"), 18 Pa. C.S.A. § 2503(a)(1), and carrying a firearm without a license, 18 Pa.C.S.A. § 6106. The trial court aptly summarized the underlying facts in its Memorandum and Order of February 6, 2002:

Through the various statements of [Sullivan], as well as his testimony at trial, the following series of events could reasonably be established by the jury:

On the night of January 1, 2001, Mr. McElfish and [Sullivan] were at a bar in Cumberland, Maryland, when Mr. McElfish was kicked out of the bar for "acting up." Mr. McElfish was drunk and the evidence at trial showed that he tended to act more aggressively while intoxicated. In the bar parking lot, Mr. McElfish began shouting at cars and objects. According to [Sullivan], Mr. McElfish was "demonstrating a very aggressive behavior toward anything, anybody." See Transcript of Police Interview with Charles Adrian Sullivan, dated 1/2/01, at p. 5.

The pair agreed to go hunt deer on some property in Pennsylvania that was owned by Mr. McElfish's family. While driving from Cumberland to Pennsylvania, Mr. McElfish "suddenly went off," kicking everything inside the car. Mr. McElfish "became a maniac:" he was "trashing" the inside of the car, punching and kicking the dash, the door, the windows, and the sunroof. Id. at p. 5–6. Mr. McElfish was also yelling out the window, and kicking toward [Sullivan] who was driving. Mr. McElfish "ordered" [Sullivan] to turn his lights off so that they could "ridge roam" for deer. He also punched [Sullivan] in [sic] chest, causing him to drive off road and onto a snow bank. [Sullivan] testified that Mr. McElfish was "growling" like a dog throughout the trip to Pennsylvania and stated to the police that Mr. McElfish was "trying to kick the s—— out of me at one point. . . the further out we drove the more threatening the environment was. ."

---

1. In his brief, Sullivan states that he is appealing from the trial court's order dated February 6, 2002, denying his post-sentence motions for an arrested verdict and/or a new trial. Technically, Sullivan's appeal is from the judgment of sentence entered on November 8, 2001, which became final for purposes of appeal upon the denial of Sullivan's post-sentence motions. *See Commonwealth v. Chamberlain*, 442 Pa.Super. 12, 658 A.2d 395 (1995), *appeal denied*, 543 Pa. 6, 669 A.2d 877 (1995); Pa.R.Crim.P. 720.

. . . .

When Mr. McElfish forced [Sullivan] off the road, his behavior "escalate[d] to another level of hostility," according to [Sullivan]. Id. at p. 6. Once they drove off the road and became stuck on the snow bank, [Sullivan] asked Mr. McElfish to help push the car off the snow bank. But he would not get out and push the car. The two argued over getting stuck in the snow and Mr. McElfish responded "f—— you, f—— you" and struck [Sullivan] in the shoulder. [Sullivan] stepped out of the car, and grabbed his hunting rifle from the back seat. He demanded that Mr. McElfish get out of the car. [Sullivan] later told police "why wouldn't he [the victim] just get out of the car, he kept kicking it and kicking it." [Sullivan] demanded that Mr. McElfish leave, and fired a warning shot into the air from his hunting rifle. [Sullivan] told police that he was using the rifle to intimidate Mr. McElfish to get him out of the car. However, Mr. McElfish continued to kick the inside of the car and the warning shot had no effect on him. He continued drinking and "growling," according to [Sullivan]'s testimony.

[Sullivan] stated that he remained outside of the car because Mr. McElfish had hit him. Mr. McElfish then threw something out the window at [Sullivan] which hit him in the forehead (the object could have been a beer cap). . . . [Sullivan] again asked Mr. McElfish to leave, and Mr. McElfish responded "f—— it," and punched inside of car [sic] again. When [Sullivan] grabbed the revolver out of the back seat, Mr. McElfish responded "f—— you, you going to shoot me?," or "f—— you, kill me!"

Memorandum, 2/6/02, at 6–8. McElfish was fatally shot immediately after the above exchange.

¶ 3 Following the jury's verdict, the trial court sentenced Sullivan to consecutive terms of imprisonment of five to ten years for voluntary manslaughter and one to three years for the firearm offense. Sullivan filed the following post-sentence motions: Motion in Arrest of Verdict challenging the sufficiency of the evidence to support his conviction, and Motion for New Trial on the grounds that the verdict was against the weight of the evidence, and that Sullivan's motion for a mistrial should have been granted after a state trooper testified as to an inculpatory statement made by Sullivan following his arrest which the Commonwealth failed to disclose during discovery. Sullivan also challenged the trial court's calculation of his prior record score as well as the application of a deadly weapon enhancement in the determination of his sentence.

¶ 4 Following a hearing, the trial court issued a memorandum and order on February 6, 2002 granting Sullivan's motions insofar as his sentences were modified to run concurrently rather than consecutively. The trial court denied Sullivan's remaining claims and this timely appeal followed.

¶ 5 Sullivan raises the following issues on appeal:

1. Was [Sullivan]'s conviction of voluntary manslaughter against the sufficiency and weight of the evidence presented?

. . .

2. Did the lower court commit error by not excluding through declaration of a mistrial an inculpatory statement allegedly made by [Sullivan], not disclosed as mandated in advance of trial, so as to entitle [Sullivan] to a new trial?

. . .

3. Did the lower court commit error by referring to a statement made by [Sullivan] as a "confession" in further instructions to the jury, after the jury had begun its deliberations and had requested to see a transcript of it, which request was denied by the lower court, thereby entitling [Sullivan] to a new trial?

. . .

Brief for Appellant, at 5. We shall address Sullivan's issues in reverse order.

## II. DISCUSSION

■ ¶ 6 During deliberation, the jury requested a transcript of a tape-recorded statement made by Sullivan to two state troopers. In responding to the jury's request, the trial judge read the following excerpt from Pennsylvania Rule of Criminal Procedure 646 pertaining to material permitted in possession of a jury:

During deliberations the jury shall not be permitted to have the first is a transcript of any trial testimony which would be the deposition. And the second one is a copy of any written or otherwise recorded *confession* by the defendant. So the rules of procedure do not permit me to, for you to have them in your possession during deliberation.

N.T., 9/11/01, at 86 (emphasis added). Sullivan's attorney objected to the use of the word "confession" but did not request a curative instruction. *Id.* at 87. Sullivan now argues that he is entitled to a new trial because "the lower court was expressing its opinion of Sullivan's guilt as well as invading the prerogative of the jury as a fact finder in determining how Sullivan's statement was to be regarded." Brief for Appellant, at 21.[2]

■ ¶ 7 In reviewing Sullivan's claim, we are guided by the following principles:

Every unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a **new trial. A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.** Moreover, it must be determined from all the circumstances whether a remark has a prejudicial effect; there is no fixed rule applicable to every case. An accepted guide in determining prejudicial effect is that, if the remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all, and one is not left in doubt that it had no substantial influence in the case, it will not vitiate an otherwise fair trial.

*Commonwealth v. Goodwine,* 692 A.2d 233, 237–238 (Pa.Super.1997) (citations omitted) (emphasis original).

¶ 8 We have reviewed the trial court's jury instructions in their entirety and find that they more than adequately apprised the jurors of their responsibility, as sole judges of the facts, to assess the credibility and weight to be accorded to the testimonial evidence. A contextual reading of the challenged remark indicates that the judge was reading verbatim from the Pennsylvania Rules of Criminal Procedure, not commenting directly on the substance or characterization of Sullivan's statement. We have no doubt that the effect of the trial judge's isolated remark on the jury, if there was any at all, was slight and in no way deprived Sullivan of his right to a fair

---

**2.** Sullivan's failure to raise this issue in his post-trial motions does not, as the Commonwealth argues, result in the waiver of that issue since it was properly preserved at trial. *See* Pa.R.Crim.P. 720(B)(1)(c).

and impartial trial. Consequently, Sullivan's argument must fail.

■ ¶ 9 Sullivan's second issue concerns an alleged discovery violation by the Commonwealth. At trial, State Trooper John S. Beaken offered the following testimony on direct examination by the Commonwealth regarding his recollection of Sullivan's statements to the police after the incident:

So he said then he pulled out his revolver from the back seat. And he was saying he had some type of problem loading or, or his rifle. I can't recall exactly what that was. But he said he reached for his revolver. He said it was single action. And that *he cocked the hammer* and pointed it toward Mr. McElfish and told him to get out of the car. He said a, that he said to him more or less, "What are you going to do? Shoot me?" He says: ["]Go ahead—f'n shoot me,["] something to that effect.

He said he grabbed his hand and pulled the gun towards him and it went off.

N.T. Trial, 9/6/01, at 162:21–163:6 (emphasis added).[3] Sullivan did not immediately object to this previously undisclosed inculpatory statement but instead moved for a mistrial at the commencement of proceedings the next day. During arguments on the motion, the Commonwealth admitted that no such statement had been disclosed during discovery because the Commonwealth was unaware that Sullivan had allegedly made such an admission until Trooper Beaken testified.[4] The trial court denied Sullivan's motion for a mistrial. Sullivan rejected the trial court's offer to strike the testimony and/or provide a curative instruction out of concern that it would call undue attention to the statement.

¶ 10 On appeal, Sullivan argues that a mistrial was the only appropriate remedy for the Commonwealth's alleged discovery

3.  Sullivan's attorney, in an apparent attempt to expose Trooper Beaken's disclosure as a recent fabrication, elicited the following testimony from the officer on cross examination:
     Q:   . . . [D]id he [Sullivan] specify precisely how he was holding the gun or how either one of them were holding the gun?
     A:   No.
     Q:   I see. Okay. Now you say that he told you he cocked the gun, the pistol—
     A:   Yes.
     Q:   —the revolver? And that's not in your report; is it?
     A:   No. I recall him saying that, though, he in fact he said, he said, "Are you familiar with the single action"? And then he says, "When it's cocked or something like when it's cocked, you know, it will go off, or something to that effect. But—
     Q:   But that's in Trooper Benton's report. [Y]ou know—
     A:   Well, yeah, I recall him saying that.
     Q:   Yes. But that's not saying, "I cocked it." That's saying when it's cocked it will go off;—
     A:   Yeah.
     Q:   —right?
     A:   But he said both of those things.

     Q:   Where is that in anybody's report·that he said "he cocked it"?
     A:   Well, I didn't have everything in my report there.
     Q:   It isn't in Trooper Benton's report either or—
     A:   Well that's, I do recall him saying that.
     Q:   So you specifically, you didn't write it down but you specifically recalled that he said that, that you know how a single action is when it's cocked. And you also didn't write down neither did Trooper Benton that he said that he cocked it. Wouldn't that have been somewhat important?
     A:   Well, like I said I wasn't writing down everything he said. . . .
     N.T. Trial, 9/6/01, at 167:10–168:21.

4.  The record supports the Commonwealth's assertion. During a pre-trial hearing, Sullivan's attorney asked Trooper Beaken, "[d]id he [Sullivan] say who had cocked the, had pulled the hammer back on the revolver?" Beaken responded, "I don't recall him saying that." N.T. Omnibus Pretrial Motion Hearing, 4/3/01, at 47:22–24.

violation and that the trial court erred in refusing to grant such relief. This claim has several components. We must first decide if there was a discovery violation. The trial court, relying on *Commonwealth v. Burke,* 566 Pa. 402, 781 A.2d 1136 (2001), concluded that there was such a violation. We disagree.

¶ 11 In *Burke,* the prosecution failed to turn over certain items in discovery until trial when, after repeated inquiries, the police finally provided the items to the prosecution. When the defense sought a remedy for these discovery violations, the Commonwealth relied on prior cases of this Court and the Pennsylvania Supreme Court which held that the prosecution does not violate discovery rules when, despite reasonable inquiry, it fails to discover and disclose evidence it neither possesses nor is aware of, such as evidence exclusively in police control. *See, e.g., Commonwealth v. Gribble,* 550 Pa. 62, 703 A.2d 426 (1997); *Commonwealth v. Montgomery,* 533 Pa. 491, 626 A.2d 109 (1993); *Commonwealth v. Colson,* 507 Pa. 440, 490 A.2d 811 (1985); *Commonwealth v. Bonacurso,* 500 Pa. 247, 455 A.2d 1175 (1983); *Commonwealth v. Piole,* 431 Pa.Super. 391, 636 A.2d 1143 (1994); *Commonwealth v. Battiato,* 422 Pa.Super. 285, 619 A.2d 359 (1993); *Commonwealth v. Rakes,* 398 Pa.Super. 440, 581 A.2d 212 (1990). The trial court, rejecting that line of cases, ordered dismissal of the charges and the Commonwealth appealed. On appeal, we concluded there had been a violation of the rule announced in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),[5] but that the remedy of dismissal was inappropriate. Our Supreme Court granted review in *Burke* in order to examine its previous cases in light of *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), which extended the prosecution's duty under *Brady* to discover and disclose to the accused "favorable evidence known to the others acting on the government's behalf in the case, including the police." 514 U.S. at 437, 115 S.Ct. at 1567.

¶ 12 The *Burke* court noted that Rule 305 of the Pennsylvania Rules of Criminal Procedure, Pa.R.Crim.P. 305,[6] "was promulgated in response to the dictates of *Brady.*" *Burke,* 781 A.2d at 1141 (citing *Commonwealth v. Green,* 536 Pa. 599, 607, 640 A.2d 1242, 1246 (1994)). Rule 573 provides, in pertinent part, as follows:

(1) ... In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth;

Pa.R.Crim.P. 573(B)(1)(a). The reference to "evidence favorable to the accused" is clearly drawn from *Brady.* Hence, as the *Burke* court indicates, any violation of *Brady* is also a violation of Rule

---

**5.** In *Brady,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–97.

**6.** Rule 305 was renumbered as Rule 573, effective April 1, 2001.

573(B)(1)(a), for which the trial court may impose a sanction. *Burke,* 781 A.2d at 1142. *See also* Pa.R.Crim.P. 573(E) (relating to remedies for violations of discovery rule).

¶ 13 For the purpose of deciding *Burke,* the Court assumed it was dealing with so-called "*Brady* material." *Burke,* 781 A.2d at 1143. In doing so, the Court overruled its earlier decisions that, pursuant to the last clause of Rule 573(B)(1)(a), excepted the prosecution from responsibility for nondisclosure of evidence favorable to the accused when such evidence was not "within the possession or control of the attorney for the Commonwealth." The *Burke* court held that clause to be inconsistent with the rule announced in *Kyles* that a *Brady* violation occurs when a prosecutor fails to disclose evidence favorable to the accused and known only to the police. *Burke,* 781 A.2d at 1142.

■ ¶ 14 The prosecutor's obligations under *Brady* and its progeny, including *Kyles,* flow from the Due Process Clause of the Fourteenth Amendment. The United States Supreme Court has made it clear though that "[t]here is no general constitutional right to discovery in a criminal case, and Brady did not create one; as the Court wrote recently, 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded....'" *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) (quoting *Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82 (1973)). *See also Commonwealth v. Murphy,* 493 Pa. 35, 425 A.2d 352, 357 (1981) (citing *Weatherford* and *Wardius* for stated

proposition). Our Supreme Court, however, under its constitutional rule-making authority, has gone beyond the dictates of *Brady* and the federal Constitution and mandated that, upon request, a prosecutor must also provide the following information: [7]

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth;

(c) the defendant's prior criminal record;

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; and

(g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

Pa.R.Crim.P. 573(B)(1). With respect to the case at bar, the statement by Trooper Beaken that Sullivan admitted to "cocking" the murder weapon cannot be char-

---

[7] We note that the prosecution must disclose "exculpatory evidence never requested, or requested only in a general way[.] ... when suppression of the evidence would be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Kyles,* 514 U.S. at 433, 115 S.Ct. at 1565 (quoting *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976)).

acterized as "*Brady* material." It is not exculpatory or otherwise favorable to the accused. Rather, it is inculpatory. Accordingly, neither *Burke* nor *Kyles* are dispositive. Instead, the only potentially applicable rule is Rule 573(B)(1)(b), *supra*, governing disclosure of inculpatory statements.

¶ 15 Here, the Commonwealth did, in fact, turn over all of the statements of the defendant, including a tape-recorded statement and others reflected in the police reports. Although the disputed statement by Trooper Beaken can certainly be characterized as inculpatory, disclosure of such a statement under Rule 573(B)(1)(b) is limited by the express terms of the rule to any statement "that is in the possession or control of the attorney for the Commonwealth." Pa.R.Crim.P. 573(B)(1)(b). The Commonwealth was not in possession of the disputed statement, therefore the prosecution had no obligation to provide it to the defense. Perhaps our Supreme Court will someday interpret its rule to apply to inculpatory statements in the possession of the police but not known to the prosecution, as is the case for exculpatory statements by virtue of *Kyles* and *Burke*. As an intermediate appellate court, however, our function is to "maintain and effectuate the decisional law of [the Supreme Court] as faithfully as possible[,]" *Commonwealth*

*v. Dugger*, 506 Pa. 537, 486 A.2d 382, 386 (1985), not to anticipate a future ruling of the Court by adopting a new standard. This is particularly true in the area of the Court's constitutional rule-making authority, where the Court should speak first.

¶ 16 Since the Commonwealth committed no discovery violation, no remedy was required. Accordingly, the trial court properly denied the motion for a mistrial. *Commonwealth v. Priovolos*, 746 A.2d 621, 626 fn. 6 (Pa.Super.2000), *appeal denied*, 563 Pa. 643, 758 A.2d 1198 (2000) ("[t]his Court may affirm a trial court order when it is correct on any legal ground, regardless of the legal basis on which the trial court relied.") (citation omitted).[8]

¶ 17 Finally, Sullivan argues that the evidence was insufficient to support his conviction for voluntary manslaughter and that the jury's verdict of guilty on that charge was against the weight of the evidence. The Crimes Code defines the offense of voluntary manslaughter, in relevant part, as follows: "A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by (1) the individual killed[.] ..." 18 Pa.C.S.A.

8. We note our agreement with the trial court that the disputed evidence was merely cumulative of other properly admitted evidence. While Sullivan may have never said that he "cocked" the gun, he did admit in his recorded statement to Trooper Brian Hoover that he pointed the weapon at McElfish. Memorandum, 2/6/02, at 15 (citing Transcript of Police Interview with Charles Adrian Sullivan, 1/2/01, at 10). Moreover, and perhaps more importantly, the Commonwealth, to its credit, made no attempt to capitalize on or to exploit the belated disclosure by Trooper Beaken. During his closing argument, the prosecutor made no reference to the testimony and avoided any discussion as to how the weapon

got cocked. We fail to see how, under these circumstances, the defendant was prejudiced. "A mistrial is required only when an incident is of such a nature that its unavoidable effect is to deprive appellant of a fair trial." *Commonwealth v. Chambers*, 528 Pa. 558, 599 A.2d 630, 637 (1991), *reargument denied* (Pa. 1992) (finding no abuse of discretion by trial court's refusal to grant a mistrial after Commonwealth produced a statement taken from appellant which was not supplied to defense counsel during pre-trial discovery). As was the case in *Chambers*, Sullivan's request for a mistrial was "out of proportion to the discovery violation alleged." *Id.*

§ 2503(a).[9] As the trial court explained in its memorandum on Sullivan's post-trial motions,

> the defendant must intentionally kill in the heat of passion, or a sudden and intense passion, and must have been seriously provoked. *See Commonwealth v. Tolbert,* [448 Pa.Super. 189,] 670 A.2d 1172, 1179 (Pa.Super.1995). Sudden and intense passion (or "heat of passion") under 18 Pa.C.S.A. § 2503(a), has been ruled to "include emotions such as anger, rage, *sudden resentment or terror,* which renders the mind incapable of reason." *Commonwealth v. Mason,* [559 Pa. 500,] 741 A.2d 708, 714 (Pa.1999) (emphasis added); *Commonwealth v. Ragan,* [560 Pa. 106,] 743 A.2d 390, 396–97 (Pa.1999). The test for "serious provocation" is "whether a reasonable man confronted with this same series of events would have become impassioned to the extent that his mind was incapable of cool reflection." *Commonwealth v. Eddowes,* [397 Pa.Super. 551,] 580 A.2d 769, 772 (Pa.Super.1990). Furthermore, in making an objective determination as to what constitutes sufficient provocation for homicide, reliance may be placed on the cumulative impact of a series of related events. *Commonwealth v. Whitfield,* [475 Pa. 297,] 380 A.2d 362, 366 (Pa.1977).

Memorandum, 2/6/02, at 5 (footnotes omitted).

¶ 18 Turning first to Sullivan's claim that the evidence was insufficient to support his conviction for voluntary manslaughter, we are guided by the following standard of review.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.... When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 751 (2000) (citations omitted).

¶ 19 Here, the Commonwealth offered considerable evidence of McElfish's aggressive and, at times, violent behavior toward Sullivan as the two men drove from Maryland to Pennsylvania. From this evidence, and in light of Sullivan's own statements and testimony, a jury could reasonably infer that the cumulative impact of the events on the night in question seriously provoked Sullivan to shoot McElfish out of anger, rage, sudden resentment or terror. Moreover, the Commonwealth offered forensic evidence to suggest that the shooting was not accidental or the result of suicide by McElfish. Viewing all of the evidence in a light most favorable to the Commonwealth as verdict winner, and drawing all reasonable inferences therefrom favorable to the Commonwealth, we find that the evidence was sufficient to support the jury's verdict of guilt on the charge of voluntary manslaughter.

¶ 20 "An allegation that the verdict is against the weight of the evi-

---

9. Alternatively, "[a] person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title, but his belief is unreasonable." 18 Pa.C.S.A. § 2503(b). This theory of voluntary manslaughter is inapplicable here since the defense presented no argument that the killing of McElfish was justified.

dence is addressed to the discretion of the trial court." *Widmer,* 744 A.2d at 751–52 (citation omitted). Our Supreme Court has explained that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Id.* at 753 (citation omitted). "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. *Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." Id.* at 751 (emphasis added) (citations omitted). "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Goodwine,* 692 A.2d 233, 236 (Pa.Super.1997) (citation omitted). Stated another way, and as the trial court noted, this Court has explained that "the evidence must be 'so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Commonwealth v. La,* 433 Pa.Super. 432, 640 A.2d 1336, 1351 (1994), *appeal denied,* 540 Pa. 597, 655 A.2d 986 (1994) (citation omitted).

¶ 21 In this case, the trial court purports to having reviewed the weight of the evidence and concludes that "[i]t cannot be said that the verdict in the instant case shocks the Court's conscience under the standard for a motion for new trial." Memorandum, 2/6/02, at 4. Were the basis of this ruling clear, we would have no trouble affirming it because a trial court's exercise of discretion in finding that a verdict is or is not against the weight of the evidence is "[o]ne of the least assailable reasons for granting or denying a new trial." *Widmer,* 744 A.2d at 753. However, while the trial court differentiated its ruling on Sullivan's sufficiency of the evidence challenge from that of his weight of the evidence challenge, Memorandum, 2/6/02, at 12, the court appears to have blended the standards of review applicable to each type of claim. The trial court stated:

> The review of the evidence above [which was conducted to resolve and reject the sufficiency claim under the proper standard] *indicates that there was evidence to support each element.* Therefore, a new trial should not be granted . on the basis that the verdict was against the weight of the evidence.

*Id.* (emphasis added). That, however, was not the question before the trial court on Sullivan's weight challenge. That challenge, as explained above, conceded that there was "[e]vidence ... to support ... each material element of the crime charged[.] ..." *Widmer,* 744 A.2d at 751. The question the trial court should have been answering, in the sound exercise of its discretion, was whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.* at 752 (citation omitted). Perhaps that was the trial court's conclusion but we are unable, on this record, to make that determination.[10]

---

**10.** Part of our confusion is caused by the trial court's statement at the beginning of its discussion of the weight and sufficiency challenges that "[i]t cannot be said that the verdict in the instant case shocks the Court's conscience under the standard for a motion for new trial [based on the weight of the evidence]. However, a more ambiguous issue is whether the Commonwealth proved the elements of voluntary manslaughter beyond a reasonable doubt under the arrested verdict standard [based on the sufficiency of the evidence]." Memorandum, 2/6/02, at 4. If it had applied the correct standard as an-

¶ 22 Our role, as noted above, is to review the trial court's exercise of discretion in ruling on a weight of the evidence challenge. We do not review the underlying question of whether the verdict is against the weight of the evidence. *Widmer*, 744 A.2d at 753. Here, because of the confusion described above, we are unable to conduct our limited review as to whether the trial court abused its discretion in concluding that its conscience or sense of justice was not shocked by the guilty verdict.[11]

¶ 23 Accordingly, we remand[12] this case to the trial court with directions to review Sullivan's challenge to the weight of the evidence under the appropriate standard. *Widmer, Brown.* If the trial court, after review, concludes that its sense of justice is shocked by the jury's verdict, the trial court should grant a new trial subject to appeal by the Commonwealth (if it should decide to do so). If the trial court should conclude that its sense of justice is not shocked, it shall deny relief. Sullivan may thereafter appeal that decision to this Court and we will then be able to conduct our very limited review of that exercise of discretion by the trial court.

¶ 24 Judgment of sentence affirmed. Case remanded with directives. Jurisdiction relinquished.

¶ 25 FORD ELLIOTT, J., concurs in result.

---

nounced in *Widmer*, perhaps the trial court would have reached a different conclusion on the weight of the evidence challenge. We offer no opinion on this point, of course, as that determination is for the trial court to make in the first instance and on remand as we order herein.

11. The Supreme Court has clearly said that it is the trial court's sense of justice that must be shocked before a new trial may be granted on a claim that the verdict is against the weight of the evidence. *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177, 1191 (1994). It is irrelevant that our sense of justice may be shocked. That is the import of the Supreme Court's directive in *Widmer* that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Widmer*,

744 A.2d at 753 (citing *Brown*, 648 A.2d at 1189).

12. In *Widmer*, where the Supreme Court concluded that this Court had applied an incorrect weight standard, the Court observed that where a reviewing court applies the incorrect standard it is generally appropriate to remand the matter to that court for application of the appropriate standard. *Widmer*, 744 A.2d at 752. Here, the trial court, in context, is the reviewing court as it reviews the jury's determination in passing on a weight of the evidence challenge. A remand is appropriate for, different from *Widmer*, where the trial court concluded that a new trial was warranted and this Court applied the incorrect standard, here we are unable to determine if the trial court applied the correct standard. Since we may only review the trial court's exercise of discretion, a remand is proper.