J-S02039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　:　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　　　　:　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
TANISHA YOUNG　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Appellant　　　　　　　　:　No. 1199 EDA 2017

Appeal from the Judgment of Sentence March 13, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007978-2015

BEFORE:  BOWES, J., NICHOLS, J., and RANSOM, J.*

MEMORANDUM BY RANSOM, J.:　　　　　　　**FILED FEBRUARY 27, 2018**

Appellant Tanisha Young appeals from the judgment of sentence imposed after the trial court convicted her of possessing an instrument of crime, simple assault, and recklessly endangering another person.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case, as follows:

> On the evening of June 22, 2015, Ms. Young and two of her friends went to the Crab House on Germantown Avenue [in Philadelphia].  The victim, Jaime Blackston, was tending bar at the Crab House that night.  Appellant Young and her friends ordered a number of drinks during the night, but when Ms. Blackston refused to serve Ms. Young and her friends any more alcohol, Ms. Young became belligerent.  Ms. Young then went behind the bar and pushed Ms. Blackston against the wall.  Both

---

[1] 18 Pa.C.S. §§ 907(a), 2701(a), and 2705, respectively.

*Retired Senior Judge Assigned to the Superior Court

fell to the ground, with Ms. Blackston atop Ms. Young. While they were on the ground, Ms. Young punched Ms. Blackston in the face with one hand, grabbed her hair with the other, and kicked Ms. Blackston in the stomach with her knee. Security guards intervened to separate Ms. Young and Ms. Blackston.

After this initial scuffle was broken up, Ms. Young went toward the entrance of the Crab House. Ms. Blackston was heading to the bathroom near the same entrance when Ms. Young struck her with an object that she believed to be a bottle. The Crab House's security video indicates that, right before the assault, Ms. Blackston and Ms. Young lunged toward each other, but other people quickly separated the two. Seconds later, Ms. Young swung at, and struck Ms. Blackston with an object she was holding in her right hand. After security separated the two this time, Ms. Blackston reached up to her forehead. Ms. Blackston had been hit on the upper right side of her right eye, causing her to bleed profusely. Ms. Blackston was transported to Einstein Hospital where she received stitches to close the wound over her eye; the wound ultimately left her with a scar.

A bench trial began . . . on September 26, 2016 with Ms. Young being tried alongside co-defendant, Davon Wilson (docket number CP-51-CR-0007977-2015). At the close of Commonwealth's case, both defendants moved for judgment of acquittal, which th[e trial] court denied. The defense called Sung C. Kim, owner of the Crab House, as a witness, who testified about the security video marked as Commonwealth's Exhibit C-1 and policies of his establishment. During his review of the security video, Mr. Kim testified that he could see Ms. Blackston throw a punch at Ms. Young and Ms. Young throw a punch of her own, but Ms. Blackston was restrained by a fellow bar employee. On cross, Mr. Kim admitted that the footage shows Ms. Young with an object in her hand and that the footage may show her hitting Ms. Blackston.

Following Mr. Kim's testimony, this trial was adjourned until November 3, 2016, whereupon the defense continued with its case. On November 3, 2016[,] counsel stipulated that if Precious Swint, a friend of Ms. Young, [had] been called to testify as a character witness, she would testify that Ms. Young has a reputation for being . . . law abiding, peaceful and truthful.

The co-defendants then called Ms. Swint as a fact witness. Ms. Swint testified that she was present at the Crab House with Ms.

Young, and that Ms. Blackston refused to serve them additional drinks because they had not tipped her. Ms. Swint further testified that she did not see who started the fight between Ms. Young and Ms. Blackston, but she testified that Ms. Blackston was atop Ms. Young and punching her in the face. After security broke up the fight, Ms. Swint left the bar.

The Commonwealth and defense further stipulated to the contents of the initial Philadelphia Police Department report (also known as "75-48") and to character evidence relating to both Ms. Young and her co-defendant, Ms. Wilson. Neither Ms. Young nor Ms. Wilson testified.

[The trial court] found Ms. Young guilty of [possessing an instrument of crime with intent, simple assault, and recklessly endangering another person], and not guilty of Aggravated Assault and Terroristic Threats. Sentencing was deferred to January 13, 2017 to obtain a Pre-Sentence Investigation report. Due to a family emergency with defense counsel, sentencing was continued again. On February 15, 2017, Appellant argued an oral motion for extraordinary relief pursuant to Pa.R.Crim.P. 704(B), which [the trial court] denied. Because the parties had a dispute as to the amount of restitution the Commonwealth was seeking to have imposed as part of Ms. Young's sentence, sentencing was deferred to March 13, 2017.

On March 13, 2017, [the trial court] sentenced Ms. Young to concurrent terms of two years of probation on all charges.

Trial Court Opinion (TCO), 7/26/17, at 1-4 (citations to the record omitted).

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a responsive opinion.

Appellant now raises the following issue on appeal:

Was the evidence at trial sufficient to prove that [Appellant]'s actions were not in self-defense?

Appellant's Brief at 6.

We review a claim challenging the sufficiency of the evidence as question of law. **Commonwealth v. Sullivan**, 820 A.2d 795, 805 (Pa. Super. 2003) (citation omitted).

> Whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. . . . Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Fortson**, 165 A.3d 10, 14–15 (Pa. Super.) (citation and internal brackets omitted), **appeal denied**, 174 A.3d 558 (Pa. 2017)

> Here, Appellant specifically argues:

> The Commonwealth did not meet its burden to prove beyond a reasonable doubt that Appellant did not act in self-defense. It is undisputed that there was an altercation at a bar. This altercation led initially to the complaining witness being on top of Appellant and ended with a strike by Appellant against the complaining witness.

Appellant's Brief at 8.

"The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a).

> While there is no burden on a defendant to prove the self-defense claim, before that defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

> If the defendant properly raises self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense.
>
> The Commonwealth sustains this burden if it establishes at least one of the following:  1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.

*Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014) (internal brackets, citations, and quotation marks omitted) (some formatting).

The evidence as to the second confrontation at the entrance to the Crab House alone disproves Appellant's claim of self-defense.[2]  As the trial court explained:

> [During the second confrontation,] Ms. Blackston was not armed, nor did she pose a real threat to Ms. Young, when the two women lunged toward each other in the front area of the Crab House.  Ms. Blackston was immediately surrounded and then held back by third parties, and taken out of Ms. Young's way.
>
> Ms. Young . . . slipped between the security personnel and other patrons, and, without any warning, used an object[3] in her right hand to strike Ms. Blackston at the top of her face, resulting in a puncture wound above Ms. Blackston's eye that bled profusely and required several stitches to close.  This was not a case of

---

[2] We thus need not reach the question of whether Appellant acted in self-defense during the first incident of the night.

[3] In its brief to this Court, the Commonwealth contended that the object was a bottle.  *See* Commonwealth's Brief at 1-4, 6 (". . . in the face with a bottle causing a cut that bled profusely . . .").  Appellant has not challenged whether she possessed a bottle or whether a bottle is an instrument of crime.

true self-defense, but rather a surprise attack by Ms. Young on Ms. Blackston with the use of excessive force.

TCO at 7-8. We agree with the trial court that the Commonwealth sustained its burden by proving that Appellant continued to use force, even after the first confrontation had been dispersed and after third parties had surrounded Ms. Blackston and moved her away from Appellant. *See Smith*, 97 A.3d at 787; TCO at 2. Additionally, the Commonwealth also established that Appellant could have retreated by leaving the Crab House, particularly as she was near the entrance of the restaurant, but, instead, she advanced towards Ms. Blackston, passing security guards and other patrons before reaching Ms. Blackston. *See Smith*, 97 A.3d at 787; TCO at 2. Accordingly, we concur with the trial court that the Commonwealth met its burden to prove beyond a reasonable doubt that Appellant's acts were not justifiable self-defense. *See Smith*, 97 A.3d at 787.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/18