J-S06008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHARIF JONES | : | |
| | : | No. 1746 EDA 2017 |
| Appellant | | |

Appeal from the Judgment of Sentence January 13, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012791-2015

BEFORE:  BOWES, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 04, 2018**

Sharif Jones appeals from the judgment of sentence of four to fifteen years imprisonment followed by twenty years probation, which was imposed following his convictions of rape of a child, involuntary deviate sexual intercourse ("IDSI") with a child, unlawful contact with a minor, corruption of a minor, and indecent assault of a child.  After careful review, we affirm.

The victim testified to the following at trial.  Late on the night of April 29, 2014, while her mother was in the shower and without her knowledge, twelve-year-old D.J. went to get snacks at a convenience store located at 69th and Ogontz Streets in the West Oak Lane neighborhood of Philadelphia, Pennsylvania.  When D.J. entered the store, she was approached by a man she did not know and had never spoken to previously, later identified as Appellant.  Appellant asked D.J. what her name was and her age.  She

identified herself and told him that she was "about to be thirteen." N.T. Trial, 10/3/17, at 16. Appellant questioned whether it was late for her to be out, and asked if anyone was home. D.J. told him that her mother was waiting for her at home.

D.J. testified that at some point, Appellant "was touching on me" and "was grabbing my butt." *Id*. at 28. She felt uncomfortable and scared, and put her hands up between her and Appellant's chest. *Id*. at 19. He forcibly grabbed her hand and placed it on his groin. The total interaction lasted approximately five minutes. Appellant wrote a name and phone number on a piece of paper, gave it to her, and left the store.

When D.J. went outside, he was waiting for her. He wrapped his arm around her shoulder and they started walking. They stopped at a white house with a garden area, and Appellant put his hand down her shirt and touched her breasts underneath her clothes. Then he led her to steps on the side of the house leading to a basement, where he pushed her to her knees, held her head down, and forced her to perform oral sex.

After that, they continued to walk. Appellant kept his arm tightly draped around her shoulders. They walked for many blocks, and stopped in an alley with a balcony above. Appellant pushed her face against the wall, pulled down her pants, and tried to penetrate her wearing a condom. When he was unsuccessful, he removed the condom and penetrated her vaginally. Then he forced her to her knees, put his penis in her mouth, and ejaculated. He told her not to swallow it so she would not get pregnant. *Id.* at 33. Appellant left,

and D.J. finally found a street that she recognized and made her way home. The police were at her house because her mother had called them to report her missing.

When the victim's mother first asked her where she had been, she said she had just been on a walk. Based on her daughter's disheveled appearance, her mother asked her again. D.J. told her that she had been raped. *Id*. at 63. D.J. described to police how she was abducted at the store. When the police asked her to speak more clearly, she began crying stating she could not, because if she swallowed "that," she could get pregnant. *Id*. at 71.

The Commonwealth played the surveillance tape from the corner store during D.J.'s testimony. Exhibit C-1. D.J. identified Appellant and pointed to herself as she entered the store. She testified that the fourteen minutes of video accurately depicted what occurred between herself and Appellant while they were in the store.

The evidence revealed that the police transported D.J. to the hospital for a physical examination and a psychological evaluation. The report from the physical examination was marked for identification as Exhibit C-5, and it noted flecks of dirt and gravel in the victim's pubic area. Property receipts for the rape kit and the victim's clothes were marked as Exhibits C-6 and C-7 respectively, and admitted by stipulation. In addition, it was stipulated that the rape kit and saliva sample tested positive for sperm, which matched a prior sample of Appellant's DNA, and the reports were marked as exhibits and

admitted. D.J.'s date of birth was the subject of a stipulation, and confirmed that she was twelve years old at the time of the sexual assaults.

The eighteen-year-old Appellant testified at trial. He denied that he touched the victim in the store and he testified that she was the aggressor. He also stated that he did not know her age. According to Appellant, the only sexual act was oral sex, it was consensual, and it occurred on the outside steps of his home with his mother inside.

Following a nonjury trial, Appellant was convicted on all but one count.[1] The court imposed a sentence of four to fifteen years imprisonment followed by twenty years probation. Appellant filed a timely post-sentence motion for a new trial alleging that the verdict was against the weight of the evidence. He claimed that the video surveillance footage contradicted crucial factual allegations made by the complainant and conclusively proved that she seduced him in the store and lied to police and to the court. In addition, he alleged that her testimony was so inconsistent as to be unbelievable as to render the verdict unreliable and shock the conscience. The trial court denied Appellant's motion, finding that Appellant's sufficiency argument was premised on the twelve-year-old victim's consent to the sexual activity, and that by law, a child victim cannot consent to sexual contact. Moreover, the court found that since the victim's testimony was corroborated by both physical evidence and Appellant's own testimony, the evidence was not

---

[1] Appellant was acquitted of unlawful restraint-serious bodily injury.

patently unreliable. Finally, the trial court concluded that the verdict was not so contrary to the evidence as to shock its sense of justice.

Appellant filed a timely appeal. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and he complied. The trial court authored its Pa.R.A.P. 1925(a) opinion.

Appellant's sole issue on appeal is:

> Was the verdict against the weight of the evidence because there is video surveillance footage which contradicts the complainant regarding crucial factual allegations and which conclusively proves that the complainant lied to the police and lied to this court under oath about what occurred and how she first made contact with Appellant thereby rendering the complainant's testimony so inconsistent, contradictory, and not believable such that the verdict is unreliable, shocks the conscience and is unjust?

Appellant's brief at 14.

Succinctly stated, Appellant's claim is that the trial court abused its discretion when it found that the verdict was not against the weight of the evidence. A weight of the evidence claim "concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Miller*, 172 A.3d 632, 643 (Pa.Super. 2017). In ruling on such a motion, the trial court need not view the evidence in the light most favorable to the verdict winner, but "may instead use its discretion in concluding whether the verdict was against the weight of the evidence." *Miller*, *supra*. Furthermore:

> A new trial should not be granted because of a mere conflict in testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge

is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (quotation marks and internal citations omitted). In order for a trial court to find that a verdict is against the weight of the evidence, the proof must be "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa.Super. 2003).

On appeal, when we conduct a weight of the evidence review, "we do not actually examine the underlying question; instead, we examine the trial court's exercise in resolving the challenge." *Commonwealth v. Leatherby*, 116 A.3d 73, 92 (Pa.Super. 2015). Since the trial judge heard and saw the evidence presented, we give the "gravest consideration to the findings and reasons advanced by the trial judge." *Clay*, *supra* at 1055. We will find an abuse of discretion only where "the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill-will." *Id*. (citing *Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000)). For this reason, "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence." *Id*.

Appellant argues that the verdict is against the weight of the evidence because the videotape evidence reveals that the "complainant irrefutably

lied." Appellant's brief at 18. He maintains further that the twelve-year-old victim initiated sex with him, and that her original decision not to tell her mother about the incident changed only after the police confronted her about her disappearance. *Id*. The video surveillance tapes, he contends, contradict the victim's testimony because they show that she approached him. In addition, according to Appellant, the video does not depict him touching her inappropriately, and certainly, it did not show him placing her hand on his penis. *Id*.

The trial court found that the minor victim's testimony was corroborated by the video surveillance tape:

> D.J's body language in the footage shows a girl who is keeping her head down and avoiding eye contact as she answers defendant's questions. *See* Trial Exhibit C-1. The footage also corroborates D.J.'s testimony that defendant placed his hand on her buttocks. *Id*. Contrary to defendant's claim, the footage does not contradict D.J.'s additional testimony that defendant placed her hand on his groin.

Trial Court Opinion, 8/25/17 at 4 (citations omitted). Moreover, the trial court rejected Appellant's argument that the twelve-year-old victim initiated the sexual contact as legally irrelevant because, by law, she could not consent. The court found that whether or not D.J. told her mother immediately upon returning home was irrelevant as the physical evidence obtained from her medical examination, as well as the video surveillance, corroborated her testimony. Based on its assessment of the evidence, the trial judge determined that the verdict did not shock its sense of justice.

The trial court applied the proper legal standard in reviewing the weight of the evidence, and we find no abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/18