J-S39038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARLOS ALBERTO FUNES COREAS | : | |
| | : | |
| Appellant | : | No. 178 MDA 2023 |

Appeal from the Judgment of Sentence Entered December 5, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005045-2020

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: DECEMBER 21, 2023**

Carlos Alberto Funes Coreas appeals from the judgment of sentence entered following his convictions for indecent assault and corruption of minors.[1] He alleges the verdict was against the weight of the evidence. Because the trial court applied an incorrect standard to Appellant's weight claim, we remand.

The trial court summarized the factual history as follows:

> This case arises from a report made by ChildLine on March 29, 2020. Mandated reporters, such as therapists, will report to an agency called ChildLine and ChildLine will take that information and disseminate it to the District Attorney's Office, then to Children and Youth, and then to the local police department that covers the area the incident was alleged to have taken place in. In this case, the victim, [J.L.], began seeing a therapist in high school. While seeing that therapist, [J.L.] disclosed an incident of sexual assault that had occurred a few years prior between himself and

---

[1] 18 Pa.C.S.A. §§ 3126(a)(8) and 6301(a)(1)(i), respectively.

[Appellant]. At that point, [J.L.'s] therapist disclosed that they would have to report the incident of abuse because they were a mandatory reporter. [J.L.] indicated in his testimony that he was anxious, scared, and nervous about the mandatory reporting and that he did not want this to be reported.

[J.L.], at the time of trial, was a 20-year-old man who had been born female under the name [Y.L.]. [J.L.] had transitioned to being a man at age 15. [J.L.] first met [Appellant] in [J.L.'s] freshman year of high school, when he was 13 or 14 years old. [J.L.] knows [Appellant] because [Appellant] is married to [J.L.'s] mother. [J.L.] had lived with his mother and [Appellant] for roughly five or six months in a trailer the couple owned in York County. While living in the trailer, [J.L.] slept in the living room with walls around his bed, but no door. It is important to note that [J.L.] had not transitioned in the physical sense at the time of this incident with [Appellant].

One night, while living with his mother and [Appellant], [J.L.] was awoken to someone grabbing his waist. [J.L.] testified that he knew the individual grabbing his waist was [Appellant], because he recognized [Appellant's] voice. After grabbing [J.L.'s] waist, [Appellant] made his way up [J.L.'s] waist and started playing with his chest. After touching [J.L.'s] chest, [Appellant] grabbed [J.L.'s] chin and pulled it towards him; [Appellant] then kissed [J.L.]. Following the kiss, [Appellant] went back to playing with [J.L.'s] chest. [Appellant] then moved his hand into [J.L.'s] boxers. [J.L.] then testified that [Appellant] began to rub [J.L.'s] clitoris and penetrated [J.L.'s] vagina with his hand. It was further testified to that [J.L.] was scared and froze when these events were occurring.

[J.L.] testified that he felt himself unfreeze when [Appellant] grabbed [J.L.'s] hand and forced it behind him. [J.L.] further testified that, if [Appellant] had been able to move [J.L.'s] hand, at that location, his hand would have ended up moving to [Appellant's] lower region, as [Appellant] had been laying parallel behind [J.L.]. When [J.L.] unfroze, he pushed [Appellant] off the bed. [J.L.] testified that [Appellant] was only wearing boxers and a "wife beater" styled tank top at the time. [J.L.] further testified that [Appellant's] touching began over the clothes and

eventually proceeded to underneath the clothing. When [Appellant] touched [J.L.'s] vagina, [J.L.] testified that he told [Appellant] to get off him and that [Appellant] failed to do so. The touching only stopped when [J.L.] pushed [Appellant] off the bed. In response to the sound of [Appellant] being pushed from the bed [J.L.'s] mother . . . entered the room and asked [Appellant] why he was in the room. [Appellant] told [J.L.'s mother] that he could not remember why he was in the room, at which point [J.L.'s] mother took [Appellant] back to their room.

The week following this incident, [Appellant] entered [J.L.'s] room in the middle of the night again and began playing with [J.L.'s] hair. [J.L.] testified that while [Appellant] was playing with his hair, [Appellant] was apologizing for what he had done the previous week. During this interaction, [Appellant] only touched [J.L.'s] hair and the interaction ended when [J.L.'s] mother entered the room. When [J.L.'s] mother walked in, [J.L.] testified that she had asked [Appellant] why he was in [J.L.'s] bed. [Appellant] responded that he was just telling [J.L.] how much he loved him. [J.L.] testified that he only lived with [Appellant] a week and a half or so after these incidents occurred. Thereafter, [J.L.] moved into his biological father's house and did not live with [Appellant] again. Initially, [J.L.] had only told his best friend at school that anything had happened with [Appellant].

Amber Crawford-Wagman, of Turning Point Counseling and Advocacy Center, was permitted to testify as an expert witness in the field of victim behavior and victim responses to sexual assault. Ms. Wagman testified to counterintuitive behaviors in sexual assault survivors. Counterintuitive behaviors are things that a person not working in the field of victim advocacy would assume are strange or odd. For example, a survivor of sexual violence may not be crying when talking about it, may not talk about the experience right away, or may even show affection to their abuser. These are all very common behaviors in a survivor's journey. Ms. Wagman further testified that another common counterintuitive behavior would be delayed disclosure. Delayed disclosure would mean that somebody waited a period of time before they told anyone about what was happening to them. Additionally, a sort of counterintuitive behavior could be continued contact with the assailant.

There could be a variety of reasons for continued contact, such as an already established relationship before the abuse would make that likely, like a familial relationship.

Ms. Wagman additionally testified about the responses our bodies have to traumatic situations. When any of us are in a traumatic situation, our bodies automatically go into what is called "fight, flight, freeze, or fawn." Ms. Wagman explained that this is something automatic that our bodies choose to do. We do not really have a say in it, but it is a basic survival instinct. Flight would be running away from the situation, fight would be fighting back. Freezing would be the feeling of being frozen with an inability to move or react. Finally, fawning is doing what a person is asking you to do, even if you do not want to, because you think it will make you safer in the long run. Ms. Wagman further testified that every survivor of sexual assault displays different behaviors after the abusive contact. There are common reactions to abuse, however, no two survivors tend to mirror each other exactly.

Following the March 29, 2020, ChildLine report, this case was assigned to Detective Daniel Grimme for investigation. When Detective Grimme began his investigation he spoke to [J.L.], [Appellant], and [J.L.'s] mother. Detective Grimme spoke with [Appellant] around May 2020. The interview with [Appellant] was conducted at the police station and was audio and visually recorded. When asked about the allegations, [Appellant] noted that he was aware of the allegations and informed Detective Grimme that he had been drinking during the time period the allegations were alleged to have occurred, and that he did not remember any more than waking up in his own room every day. During the interview, [Appellant] made a statement that he would have to have been extremely drunk for something like the allegations against him to have occurred. When specifically asked about the allegation that [Appellant] touched inside [J.L.'s] vagina, [Appellant] stated, "Nah, I don't think so." When asked specific questions about the incident, the Detective testified that [Appellant's] demeanor was not "overly anxious or angry or reactive or anything." When asked, "is there any way that this situation could've become misconstrued," [Appellant's] only explanation was having to do with how intoxicated he would have been at that time.

- 4 -

> At trial, Defense Counsel called [L.R-C.], [Appellant's] wife and victim's mother, to testify. Much of [L.R-C.'s] testimony was directly contradictory to testimony elicited from the victim in this case. Additionally, [L.R-C.], continues to call [J.L.] . . . a nickname that relate[d] to his birth name . . . , despite [J.L.'s] transition. [L.R-C.] testified that she has been with [Appellant] for seven years and has lived with him the entire time. She testified that [J.L.] lived with her and [Appellant] from 2016 to 2019. [L.R-C.] testified that she never heard a loud bang and rushed into the living room to see [Appellant] and [J.L.] together. She testified that she never asked [Appellant] what he was doing in [J.L.'s] room. [L.R-C.'s] testimony was particularly contradictory to the victim's when she testified that [J.L.] had asked her to sign permission slips to start hormone therapy and that she had declined because she "didn't want [J.L.] to regret anything and it be her fault." [J.L.] testified that this never occurred, and he had never asked for her permission to start hormone therapy.

Trial Court Opinion, filed Mar. 16, 2023, at 2-8 ("Rule 1925(a) Op.") (citations to trial transcript omitted).

A jury found Appellant guilty of indecent assault and corruption of minors. The trial court sentenced Appellant to time served to 23 months' imprisonment followed by a two-year term of probation. Appellant filed a post-sentence motion challenging the weight of the evidence.[2] Appellant alleged:

> 10. [Appellant] moves for a new trial on the above-listed charges for which he was convicted on the grounds that these verdicts were against the weight of the evidence.
>
> 11. Certain facts are so clearly of greater weight in the instant case, that to ignore them or to give them equal weight with all the facts is to deny justice.

---

[2] Appellant also challenged the imposition of fines. The trial court removed the fines from the sentence.

12. Specifically, [Appellant] contends that the verdicts were against the weight of the evidence for the following reasons:

This case deals with an alleged incident of physical and sexual assault committed in a small trailer in York County.

The complainant was the son of [Appellant]'s wife.

[Appellant] was charged at this docket with aggravated indecent assault, indecent assault, and corruption of minors.

[Appellant] was acquitted of aggravated indecent assault.

The complainant in this case testified inconsistently about key facts regarding the alleged incident.

[Appellant]'s wife, who was also present in the trailer at the time of the alleged incidents, also testified at trial, explaining that no inappropriate touching happened.

The jury clearly took note of these inconsistencies, acquitting [Appellant] of the most serious charge and noting after trial that they did not believe [Appellant] touched the complainant's [breasts] or vagina, but rather, only touched the complainant's head.

The guilty verdicts in this case cannot stand as they are not supported by the law in this case, as both indecent assault and corruptions [sic] of minors require sexual activity and/or having indecent contact with the complainant.

The jury also noted after their verdict was rendered that they only convicted [Appellant] of corruption of minors due to the instruction given by the [j]udge that if they convicted him of indecent assault that they must convict him of corruption of minors.

The totality of the evidence presented at trial requires verdicts of not guilty for the charges of indecent assault and corruption of minors.

In rendering verdicts of guilty for the above-listed offenses, the jury could only speculate among conflicting interests as to the elements of those offenses and incorrectly applied the believed facts to the law.

13. Accordingly, the jury's guilty verdicts are against the weight of the evidence such that is [sic] shocks the conscience.

Appellant's Post-Sentence Motion, 12/16/22, at 2-3 (unpaginated; subparagraph designations omitted).

The trial court denied the motion, and Appellant timely appealed. His concise statement of errors pursuant to Pa.R.A.P. 1925(b) raised, among other things, a challenge to the weight of the evidence. In its Rule 1925(a) opinion, the trial court stated Appellant challenged the weight of the evidence, but it addressed the claim applying the standard applicable to a sufficiency challenge. Rule 1925(a) Op. at 10-14.

Appellant's brief to this Court raises the following issue:

Did the lower court abuse its discretion in denying [Appellant's] challenge that the weight of the evidence was against his convictions because the jury disbelieved critical portions of the complaining witness' account where it acquitted [Appellant] of aggravated indecent assault, the complaining witness' testimony was refuted by his mother's version of events, there was no corroborating evidence, and the lower court appeared to apply sufficiency standards in urging affirmance?

Appellant's Br. at 4.

Appellant maintains the trial court abused its discretion in denying his challenge to the weight of the evidence. He notes the jury acquitted him of aggravated indecent assault, thereby rejecting J.L.'s principal claim, the testimony of L.R-C. contradicted J.L., and there "was a total lack of evidence to corroborate J.L.'s allegations." *Id.* at 19. He also points out that the trial

court applied the sufficiency of the evidence standard when denying his weight claim.

A weight claim is for the trial court in the first instance. *See Commonwealth v. Stiles*, 143 A.3d 968, 980 (Pa.Super. 2016). We review a trial court's order denying a weight challenge for an abuse of discretion. *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing" an order granting or denying a weight claim. *Id.* at 1055 (citation omitted).

A trial court should not grant a new trial on weight grounds "because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Id.* Rather, "a new trial should be awarded [on weight-of-the-evidence grounds] when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* (citation omitted). "[T]he role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* (citation omitted).

Further, in reviewing a weight claim, the trial court need not view the evidence in the light most favorable to the verdict winner. *Commonwealth*

***v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). A defendant asserting a weight claim concedes that the evidence was sufficient to support the verdict. ***Id.***

Here, Appellant preserved his weight claim in a post-sentence motion, noting alleged inconsistencies in the evidence, arguing the verdict shocked the conscience, and repeatedly stating the verdict was against the weight of the evidence. The trial court denied the motion, without providing its reasoning. In its Rule 1925(a) opinion, although the trial court pointed out that Appellant challenged the weight of the evidence, it reviewed and denied the claims under the standard applied to sufficiency claims.[3] Rule 1925(a) Op. at 10-14.

As stated above, our role in review of a weight claim is to determine whether the trial court abused its discretion in disposing of the claim. We do not review the underlying claim to determine whether the verdict was against the weight of the evidence. Here, because the trial court applied an incorrect standard to the weight of the evidence claim, we are unable to determine whether it abused its discretion in denying the claim. ***See Commonwealth v. Sullivan***, 820 A.2d 795, 807 (Pa.Super. 2003). Accordingly, we remand for

---

[3] A weight claim is distinct from a challenge to the sufficiency of the evidence. ***Widmer***, 744 A.2d at 751. In contrast to our deferential review of a weight claim, we review a challenge to the sufficiency of the evidence *de novo*. ***Id.*** "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Id.*** Further, "[w]hen reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." ***Id.***

the trial court to consider Appellant's post-sentence motion for a new trial applying the standard applicable to weight claims.

Judgment of sentence affirmed. Case remanded with instructions. Jurisdiction relinquished.

Judge Dubow joins the memorandum.

Judge McCaffery concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/21/2023