J-S09006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KEVIN D. ROUNER, | : | |
| | : | No. 1018 MDA 2017 |
| Appellant | : | |

Appeal from the Judgment of Sentence December 21, 2016
in the Court of Common Pleas of Franklin County
Criminal Division at No.:  CP-28-CR-0001904-2013

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                    **FILED JUNE 07, 2018**

Appellant, Kevin D. Rouner, appeals from the judgment of sentence imposed after his jury conviction of murder of the first degree.[1]  He received a life sentence.  Appellant chiefly challenges the weight of the evidence.  We affirm.

We derive the facts of this case from the trial court's Rule 1925(a) opinion, filed August 30, 2017, which relied on the trial court's order and opinion filed May 31, 2017, denying Appellant's post-sentence motion, and our independent review of the record.  On October 26, 2016, the jury

---

[1] The conviction of Appellant's co-defendant and paramour, Amy L. Gipe, is the subject of a separate companion appeal at 1060 MDA 2017.

---

*   Retired Senior Judge assigned to the Superior Court.

convicted Appellant of the murder of David Gipe, the husband of his paramour, Amy L. Gipe.

Late in the evening of July 18, 2013, Appellant fatally shot David Gipe on the street as he arrived home after his second-shift job. He died a few minutes later, in the arms of Mrs. Gipe.

Appellant was familiar to neighbors from his frequent visits to Mrs. Gipe while her husband was away at work. Appellant claimed he was helping Mrs. Gipes' daughters pursue careers in modeling and singing, although he had no obvious expertise or experience in the field of entertainment. Some family and friends suspected that Appellant's claim of talent management, including a group field trip to Ohio to attend an audition for "America's Got Talent," was only a pretext to spend time with Mrs. Gipe.

It turned out that Mrs. Gipe was having another affair as well, with her one-time boss, William Cardwell, and apparently a third, with one Freddy Altice, all at the same time.[2]

However, neighbors described the Dodge Durango seen in the vicinity the night of the shooting as similar to one of the two vehicles Appellant was

---

[2] The Commonwealth's theory of the case was that Mrs. Gipe solicited Appellant to murder her husband and helped to carry out the plan, *e.g.,* by coordinating with Appellant through cell phone messages when her husband was arriving home from work. Appellant carried out the plan in the expectation that he would start a new life with Mrs. Gipe, who told him that she wanted to have his baby.

known to drive from his prior visits.[3]  Also, various video surveillance cameras captured footage of the vehicle as it departed from the neighborhood the night of the murder.

After initial denials, Appellant admitted to the police that he had been in Chambersburg (where the Gipes lived) the night of the murder, driving the Dodge Durango.  Central cell phone records confirmed frequent calls and text messages between Appellant and Mrs. Gipe (even though the calls had been deleted on the phones), in particular as Appellant approached the Gipes residence, until a few minutes before the murder.  They resumed the next morning.

Recovered messages were mostly romantic or emotionally suggestive in nature, although the night before the shooting Appellant did text that they should get together the next day before all hell breaks loose.  Shortly after the murder and the police began to investigate, Appellant absconded to Florida, where he eventually gave himself up.

Experts determined that the slug which killed Mr. Gipe came from a 12 gauge shotgun.  Appellant denied owning any gun, but it turned out that he had borrowed a 12-gauge shotgun from a cousin for "indoor skeet shooting." The shotgun was never recovered.  Appellant and Mrs. Gipe were tried

---

[3] The Durango actually belonged to Appellant's father.

together and convicted on all counts. The trial court imposed sentence on December 21, 2016.

This timely appeal followed the denial of Appellant's post-sentence motion challenging, *inter alia*, the weight of the evidence. Appellant and the trial court both complied with Pa.R.A.P. 1925.

Appellant presents four questions on appeal:

> 1) Did the trial court err by finding that the verdict in [Appellant] Rouner's case was not against the weight of the evidence due to the conflicting evidence regarding the angle of the slug which entered David Gipe's body and the alleged positioning of the shooter from a tall SUV?
>
> 2) Did the trial court err by finding that the verdict in [Appellant] Rouner's case was not against the weight of the evidence based on the testimony given by Rebecca McCarty which placed the vehicle being driven by Appellant Rouner farther west on King Street and away from the scene at the time of the gunshot based on the timing of when she saw the vehicle?
>
> 3) Did the [t]rial [c]ourt err by finding that the verdict in [Appellant] Rouner's case was not against the weight of the evidence when the evidence presented by the Commonwealth to convict Appellant Rouner was almost entirely circumstantial, in that there was no eyewitness testimony presented, no one confessed to the shooting, and the weapon that fired the fatal shot has never been identified?
>
> 4) Did the [t]rial [c]ourt err by denying Appellant Rouner's motion for mistrial based on the Commonwealth showing a video to the jury during the course of trial wherein a detective interviewing [Appellant] Rouner mentions the death penalty in connection with [Appellant] Rouner multiple times thereby causing bias in the jury against [Appellant] Rouner[?]

(Appellant's Brief, at 5-6).

Appellant's first three issues all challenge the weight of the evidence. We address them together.

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." **Commonwealth v. Widmer**, 744 A.2d 745, 751–52 (Pa. 2000). A challenge to the weight of the evidence "concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." **Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013) (citation omitted), *cert. denied,* 134 S. Ct. 1792 (U.S. 2014).

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when review a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted).

For an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Rodriguez*, 174 A.3d 1130, 1140 (Pa. Super. 2017) (quoting *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003).

Here, after independent review, we conclude that the trial court properly determined that the evidence did not shock the conscience of the court. Furthermore, we find no basis to conclude that the law was not properly applied, or that the verdict or the denial of the weight claims was a result of partiality, prejudice, bias, or ill-will. *See Clay, supra* at 1055. Accordingly, we discern no basis on which to disturb the discretion of the trial court in denying the challenges to the weight of the evidence.

Moreover, we note for the sake of completeness that Appellant's weight claims proceed on a faulty premise. As already observed, a challenge to the

weight of the evidence "concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." **Lyons**, *supra* at 1067.

Therefore, Appellant's complaints about perceived defects in the quality of the evidence presented are of no moment, because they go to sufficiency, and the sufficiency of the evidence is already conceded for the purpose of the weight claim. It was the role of the jury sitting as factfinder to weigh the evidence and resolve any conflicts. Additionally,

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

**Commonwealth v. Hecker**, 153 A.3d 1005, 1008 (Pa. Super. 2016), *appeal denied*, 169 A.3d 576 (Pa. 2017) (citation omitted).

Here, the trial court, after a thorough review of the evidence presented to the jury sitting as fact-finder, concluded that the evidence was not so tenuous, vague or uncertain as to shock the conscience of the court. We discern no basis to disturb the trial court's conclusion. Appellant's first three claims do not merit relief.

Finally, in his fourth claim, Appellant challenges the trial court's denial of his motion for a mistrial based on the Commonwealth's playing of a video of a police interview which mentions that the evidence against him made it a "death penalty" case. (Appellant's Brief, at 6).[4] Appellant argues that the reference to the death penalty in the video caused bias in the jury against him. (**See id.** at 25-26). He claims that he is entitled to an acquittal or a new trial. (**See id.** at 27). We disagree.

Our standard of review of a court's denial of a motion for mistrial is as follows:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

**Commonwealth v. Caldwell**, 117 A.3d 763, 774 (Pa. Super. 2015), *appeal denied*, 126 A.3d 1282 (Pa. 2015) (citations omitted).

Preliminarily, on this issue, we note that Appellant's objection was untimely. Even though the video disk had already been admitted into

_____

[4] Appellant's question and argument appear to assume that the interview on the video at issue is that of himself, Kevin D. Rouner. (**See** Appellant's Brief, at 6, 25-26). In the sidebar conference on the motion for mistrial, etc., the trial court and counsel appear to assume that the video at issue is actually of Mrs. Gipe. (**See.** N.T. Trial, Day 4, 10/20/16, at 34-35). Defense counsel concurs. (**See id.**). Neither the video nor a transcript of the video are included in the record before us.

evidence, counsel for Appellant concededly had not asked for any redactions, and did not object until after the video was played for the jury. (**See** N.T. Trial, Day 4, 10/20/16, at 32-35).

> It is axiomatic that in order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated. In this jurisdiction one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

***State Farm Mut. Auto. Ins. Co. v. Dill***, 108 A.3d 882, 885 (Pa. Super. 2015), *appeal denied,* 116 A.3d 605 (Pa. 2015) (citations, internal quotation marks and other punctuation omitted).

Here, the trial court decided that the objection was too late. (**See** N.T. Trial, Day 4, 10/20/16, at 36). We agree.

Moreover, the claim would not merit relief. The trial court notes that during jury selection, it had already declared that this was **not** a death penalty case. (**See** Rule 1925(a) Opinion, 8/30/17, at 14).[5] Even so, after defense

---

[5] The trial court explained that it ruled out the death penalty to put the jurors' minds at ease. (**See** N.T. Trial, Day 4, 10/20/16, at 36). The Commonwealth appeared to argue categorically at trial that the case was not a death penalty case. (**See id.** at 33) ("Obviously, this is not a death penalty case."). Whether this case **could** have qualified as a death penalty case is not at issue in this appeal. Therefore, we need not decide that issue, and we decline to do so.

counsel made his belated motion for a mistrial, the trial court proposed a curative instruction to confirm that it was not a death penalty case, and defense counsel agreed.  (**See** N.T. Trial, Day 4, 10/10/16, at 36-38).

In any event, a jury is presumed to follow a curative instruction.  **See Commonwealth v. Baez**, 720 A.2d 711, 722 (Pa. 1998), *cert. denied*, 528 U.S. 827 (1999).  Appellant's fourth issue is waived and would not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/07/2018